**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4464**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

MARCO ANTONIO FLORES-ALVARADO, a/k/a Guero,

                    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Terrence W. Boyle, District Judge. (7:12-cr-00089-BO-5)

Argued: December 11, 2014          Decided: March 3, 2015

                    Amended: March 11, 2015

Before TRAXLER, Chief Judge, and WYNN and HARRIS, Circuit Judges.

Vacated and remanded by published opinion. Chief Judge Traxler wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:** Wayne Buchanan Eads, Raleigh, North Carolina, for Appellant. Yvonne Victoria Watford-McKinney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

TRAXLER, Chief Judge:

Marco Antonio Flores-Alvarado pleaded guilty to conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine and 1000 kilograms or more of marijuana, see 21 U.S.C. §§ 841(a)(1), 846, and possession with intent to distribute ("PWID") more than 100 kilograms of marijuana, see 21 U.S.C. § 841(a)(1). The district court sentenced Flores-Alvarado to life imprisonment on the conspiracy charge and a concurrent term of 480 months' imprisonment on the PWID charge. Flores-Alvarado appeals, raising several challenges to his sentence. Because the district court failed to make the required factual findings regarding the drug quantity attributed to Flores-Alvarado, we vacate and remand for re-sentencing.

I.

According to the information in the presentence report ("PSR"), Flores-Alvarado and codefendant Enrique Mendoza-Figueroa ran two related drug trafficking organizations in North Carolina. Flores-Alvarado and Mendoza-Figueroa used multiple sources in Mexico and the United States for their marijuana and cocaine and "routinely bought and sold large amounts of drugs from each other." J.A. 107.

In calculating the advisory Guidelines range, the PSR recommended that Flores-Alvarado be held accountable for at

2

least 3886.3 kilograms of marijuana and 136.125 kilograms of cocaine, which converted to a total marijuana equivalent of 31,111.16 kilograms. Included in these quantities were drugs seized from houses in Stokesdale, North Carolina (the "Stokesdale Seizure"), and Lexington, Kentucky (the "Lexington Seizure"). The PSR described those seizures as follows:

12. On April 25, 2011, agents determined that Flores-Alvarado was involved in the distribution of a large shipment of marijuana from Stokesdale, North Carolina, to Shannon, North Carolina. Agents subsequently seized 1,424 pounds (645.9 kilograms) of marijuana from a residence in Stokesdale. Following this seizure, Flores-Alvarado stopped using one of the target telephone numbers which agents had used to facilitate the seizure in this case. Additionally, calls made to and from Flores-Alvarado connected [a co-defendant] to this transaction.

. . .

17. On August 17, 2011, Flores-Alvarado traveled to Lexington, Kentucky, to coordinate the distribution of a multi-thousand-pound marijuana shipment from Kentucky to North Carolina. Although the shipment was canceled, agents with the DEA in Lexington were able to identify a significant marijuana distribution cell operating in that area. During the week of October 4, 2011, agents determined that Flores-Alvarado and [the same co-defendant] were again coordinating the delivery of a large shipment of marijuana from Lexington to the Eastern District of North Carolina. Agents established surveillance on locations previously identified during the surveillance of Flores-Alvarado in August of 2011. As a result, agents in Lexington were able to seize 3,510 pounds (1,592.1 kilograms) of marijuana and $1,835,021.40 in drug proceeds. Seven members of the Lexington [drug-trafficking organization] were also arrested.

J.A. 107-09 (footnote omitted).

3

Based on the 31,111.16 kilograms of marijuana attributed to Flores-Alvarado, the PSR assigned him a base offense level of 38, see U.S.S.G. § 2D1.1(c)(1), and, after other adjustments, a total offense level of 43. With that offense level and Flores-Alvarado's Category II criminal history, the advisory sentencing range on both counts was life imprisonment. See U.S.S.G. ch. 5, pt. A (sentencing table). However, because the statutory maximum on the PWID count was 40 years' imprisonment, see 21 U.S.C. § 841(b)(1)(B), the Guidelines range on that count became 480 months, see U.S.S.G. § 5G1.1(c)(1) (capping higher Guidelines range at statutory maximum). If the drug quantities involved in the Stokesdale Seizure and the Lexington Seizure are excluded, Flores-Alvarado's total offense level drops to 41, with an advisory sentencing range of 360 months to life.

Counsel for Flores-Alvarado filed numerous objections to drug quantities attributed to him, including the quantities from the Stokesdale Seizure and the Lexington Seizure, and asserted that Flores-Alvarado should be held accountable for no more than the equivalent of 8169.32 kilograms of marijuana, a quantity that would reduce his base offense level from 38 to 34. Counsel also filed a sentencing memorandum in which he reiterated his objections to the PSR and moved for a variance sentence of 10 years' imprisonment.

4

Sentencing was conducted over the course of two hearings, the first being continued midway through to allow for the appearance of the prosecutor who tried the case and was thus more familiar with the facts. At both sentencing hearings, counsel argued that the quantities of marijuana attributed to Flores-Alvarado from the Stokesdale and Lexington Seizures were attempted purchases that, in accordance with U.S.S.G. § 2X1.1, should be assigned lower offense levels than if the transactions had been completed. Counsel also argued that Flores-Alvarado could be held responsible for the amounts he was attempting to purchase, but that he should not be held accountable for the full quantities that were later seized. Counsel argued for a downward variance and attempted to explain to the court that his client had refused to cooperate because he feared retribution against his family by the Mexican drug traffickers.

At the second hearing, the district court asked the then-in-attendance prosecuting attorney to explain the drug quantities attributed to Flores-Alvarado. As to the marijuana, the prosecutor explained that the quantities attributed to Flores-Alvarado included 3500 pounds of marijuana from the Lexington Seizure, which she stated were attributed to Flores-Alvarado through intercepted cell phone calls establishing that he had arranged a purchase there, as well as 1424 pounds of

5

marijuana from the Stokesdale Seizure.[1]  The government did not call any witnesses or present any other evidence about the drug quantities or the Stokesdale and Lexington Seizures.

Responding to Flores-Alvarado's argument that the Stokesdale and Lexington Seizures should be treated as mere attempts, the government countered that Flores-Alvarado was charged with conspiracy, a crime that was complete when the conspiratorial agreement was reached, and that it was reasonably foreseeable to Flores-Alvarado that the Stokesdale and Lexington drug suppliers would have on hand quantities exceeding the amount he attempted to purchase.  In the government's view, Flores-Alvarado should not benefit from the fact that law enforcement was able to seize the drugs before he purchased them.

The district court agreed with the government's view and "f[ound] by a preponderance of the evidence" that Flores-

---

[1] When summarizing the transactions involving cocaine, the prosecutor included an incident involving the seizure of $189,000 in cash during a traffic stop in Georgia.  According to the prosecutor, the cash was converted to 5.9 kilograms of cocaine and attributed to Flores-Alvarado.  The PSR, however, attributed those quantities to Mendoza-Figueroa, not Flores-Alvarado.  Because we find the district court's fact-finding to be inadequate in another regard, we need not consider Flores-Alvarado's challenge to the district court's apparent inclusion of the $189,000 in the drug quantities attributed to Flores-Alvarado.  Should the issue arise on remand, Flores-Alvarado may renew his objection.

Alvarado qualified for a base offense level of 38.  J.A. 68. After applying the other adjustments as provided in the PSR, the court determined that Flores-Alvarado's total offense level was 43 and that the Guidelines sentencing range was therefore life imprisonment.  After listening to Flores-Alvarado's argument for a variance sentence and the government's response, the district court announced its sentence, stating, "All right.  On Count One, I'll impose a sentence of life and on Count Two a sentence of 480 months concurrent."  J.A. 93.

Flores-Alvarado appeals, challenging his sentence on several grounds. He argues that the district court failed to make the necessary factual findings to support its drug-quantity calculations; that the court's determination of the quantities attributable to Flores-Alvarado was clearly erroneous; that the court failed to consider the relevant 18 U.S.C. § 3553(a) sentencing factors or adequately explain the sentence; and that the life sentence amounted to cruel and unusual punishment in violation of the Eighth Amendment.

## II.

We turn first to Flores-Alvarado's related arguments challenging the drug quantity attributed to him by the district court and the sufficiency of the court's factual findings on that issue.  We review the factual findings made by a sentencing court for clear error. See United States v. Medina–Campo, 714

7

F.3d 232, 234 (4th Cir.), cert denied, 134 S. Ct. 280 (2013). Accordingly, "[i]f the district court makes adequate findings as to a controverted [sentencing] matter, this court must affirm those findings unless they are clearly erroneous." United States v. Morgan, 942 F.2d 243, 245 (4th Cir. 1991). However, the "review process cannot take place without the district court first resolving all the disputed matters upon which it relies at sentencing." Id.

Flores-Alvarado's objections to the inclusion of the Stokesdale and Lexington Seizures were not mere quibbles over the PSR's drug totals, but were specific and factually grounded enough to raise legal and factual questions about whether the events as described in the PSR supported attributing the seized quantities to Flores-Alvarado. The district court was therefore obligated to resolve the dispute. See Fed. R. Crim. P. 32(i)(3)(B) (requiring "for any disputed portion of the presentence report or other controverted matter" that the district court "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing"); United States v. Walker, 29 F.3d 908, 912 (4th Cir. 1994) (finding "specific objections to the factual findings underlying the PSR's recommendation" sufficient to trigger court's Rule 32 obligations). As we will explain, the district

8

court did not resolve the disputed issue and did not make the factual findings necessary to attribute to Flores-Alvarado the quantities involved in the Stokesdale Seizure and the Lexington Seizure.

The sentences imposed for drug offenses are driven by the quantity of drugs involved. Under the Guidelines, the drug quantities that may be attributed to the defendant include the quantities associated with the defendant's offense of conviction and any relevant conduct. See United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir. 1993). Relevant conduct in conspiracy cases includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).[2] As the Guidelines point out, however,

> the scope of the criminal activity jointly undertaken by the defendant (the "jointly undertaken criminal activity") is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. . . . The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision. The conduct of others that was not in furtherance of the criminal activity jointly undertaken by the defendant, or was

---

[2] We note that the Sentencing Commission has recently proposed amendments to the § 1B1.3 Guideline and commentary so as "to provide more guidance on the use of 'jointly undertaken criminal activity' in determining relevant conduct." Notice of Proposed Amendments to Sentencing Guidelines, Policy Statements, and Commentary, 80 Fed. Reg. 2570, 2570 (Jan. 16, 2015).

9

not reasonably foreseeable in connection with that criminal activity, is not relevant conduct under this provision.

U.S.S.G. § 1B1.3, cmt. n.2 (emphasis added); see also United States v. Soto-Piedra, 525 F.3d 527, 531 (7th Cir. 2008) ("Conspiracy liability, as defined in Pinkerton . . . , is generally much broader than jointly undertaken criminal activity under § 1B1.3.").

"Accordingly, in order to attribute to a defendant for sentencing purposes the acts of others in jointly-undertaken criminal activity, those acts must have been within the scope of the defendant's agreement and must have been reasonably foreseeable to the defendant." Gilliam, 987 F.2d at 1012-13 (emphasis added); see U.S.S.G. § 1B1.3, cmt. n.2 ("In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)."). And as to this issue, we require sentencing courts to "make particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of [the conduct at issue]." United States v. Bolden, 325 F.3d 471, 499 (4th Cir. 2003) (second emphasis added; internal quotation marks omitted).

10

In this case, the district court, by agreeing with the government's foreseeability argument, at least implicitly found that the quantities involved in the Stokesdale and Lexington Seizures were foreseeable to Flores-Alvarado. As discussed above, however, foreseeability is not enough; the acts of others may be attributed to a defendant only if those acts were foreseeable to the defendant and were within the scope of the defendant's agreement to jointly undertake criminal activity. See Bolden, 325 F.3d at 499; see also United States v. Evbuomwan, 992 F.2d 70, 74 (5th Cir. 1993) ("If the defendant has not joined the criminal activity, it does not matter that he could have foreseen the criminal act. The reasonably foreseeable standard applies only after it is shown that a jointly undertaken activity has taken place."). The district court, however, made no findings, implicit or explicit, addressing the critical factual question of the scope of the criminal activity Flores-Alvarado agreed to jointly undertake.

We recognize that the district court adopted the PSR, which can be a satisfactory means of resolving factual disputes. See, e.g., Bolden, 325 F.3d at 497; Walker, 29 F.3d at 911. Adopting the PSR does not satisfy the requirements of Rule 32(i)(3)(B), however, if the factual recitations in the PSR do not support the PSR's recommendation. See United States v. Chandia, 514 F.3d 365, 376 (4th Cir. 2008) (remanding for resentencing where

11

district court adopted PSR's recommended enhancement but PSR "did not contain any factual assertions" to support application of the enhancement); Bolden, 325 F.3d at 498 (remanding for recalculation of loss amount where district court adopted PSR but PSR "fail[ed] to support" a necessary factual finding); see also United States v. Robinson, 744 F.3d 293, 300 n.5 (4th Cir.) (explaining that "a probation officer's calculation in a PSR standing alone (that is, without the identification of supporting evidence of any kind) does not constitute a finding of fact on which a sentencing court can rely" (internal quotation marks omitted)), cert. denied, 135 S. Ct. 225 (2014). In this case, the factual recitations of the PSR are insufficient to attribute the Stokesdale and Lexington Seizures to Flores-Alvarado. See United States v. Hammond, 201 F.3d 346, 352 (5th Cir. 1999) (per curiam) (vacating sentence which attributed to defendant losses incurred by third parties because PSR adopted by the court did not contain the "absolute prerequisite[]" factual finding as to the scope of the jointly undertaken criminal activity (internal quotation marks omitted)).

As to the Stokesdale Seizure, the PSR states that in April 2011, "Flores-Alvarado was involved in the distribution of a large shipment of marijuana from Stokesdale, North Carolina, to Shannon, North Carolina," J.A. 107, and that agents

12

"subsequently seized 1,424 pounds . . . of marijuana from a residence in Stokesdale," J.A. 108 (emphasis added). Based on these facts, the PSR and the district court attributed the full amount of that seizure to Flores-Alvarado. For the amount of drugs that the Stokesdale supplier later happened to have on-hand to be attributable to Flores-Alvarado, there would need to be some kind of evidence showing that Flores-Alvarado and the Stokesdale supplier jointly agreed to operate together for future drug deals. The mere fact that Flores-Alvarado once bought marijuana from the Stokesdale supplier does not establish the kind of relationship necessary to support the attribution. See U.S.S.G. § 1B1.3, cmt. n.2(c)(4) (child pornography possessed by wholesale distributor not attributable to dealer who purchases from wholesaler "but otherwise operates independently"). The bare-bones information in the PSR about the Stokesdale Seizure does not even conclusively establish that the drugs were seized from the same marijuana dealer that Flores-Alvarado had been involved with, much less that the 1,400 pounds of marijuana were within the scope of the criminal activity jointly undertaken by Flores-Alvarado. The PSR's reference to phone calls from Flores-Alvarado connecting a co-defendant "to this transaction," J.A. 108, provides a hint that there might in fact be evidence establishing a sufficient

13

connection, but the facts actually spelled out in the PSR do not establish that connection.

The facts recited in the PSR are likewise inadequate as to the drug quantities involved in the Lexington Seizure. The PSR states that Flores-Alvarado went to Kentucky in August 2011 to coordinate a deal involving thousands of pounds of marijuana, but that the deal fell through; that agents learned in October 2011 that Alvarado again was working on a deal for a large shipment of marijuana from Lexington; and that agents placed under surveillance locations identified during Flores-Alvarado's previous trip to Lexington and thereafter seized 3500 pounds of marijuana. Unlike the allegations regarding the Stokesdale Seizure, these allegations are perhaps sufficient to establish that the drugs were seized from the same supplier that Alvarado contacted in August. Nonetheless, for the reasons discussed above, the facts of the Lexington Seizure as described in the PSR do not establish that the marijuana possessed by the supplier in October was within the scope of Flores-Alvarado's jointly undertaken criminal activity.

Because the PSR does not contain facts sufficient to show that the quantities from the Stokesdale Seizure and Lexington Seizure were within the scope of the criminal activity jointly undertaken by Flores-Alvarado and the district court failed to make any findings on this critical point, the factual findings

14

underlying the court's drug quantity calculations are "inadequate." Bolden, 325 F.3d at 500. Consequently, we are unable to review the issue and must remand for resentencing. See id. at n.34; Morgan, 942 F.2d at 245 ("In the event the district court fails to resolve a disputed factual matter on which it necessarily relied at sentencing, this court must vacate the sentence and remand for resentencing.").

## III.

For the reasons set out above, we hereby vacate Flores-Alvarado's sentence and remand for re-sentencing proceedings consistent with this opinion.[3]  On remand, the district court

---

[3] Our conclusion that a remand for resentencing is required makes it unnecessary to consider Flores-Alvarado's arguments that the district court failed to consider the relevant 18 U.S.C. § 3553(a) sentencing factors and failed to adequately explain the sentence imposed.  To the extent the other issues raised by Flores-Alvarado may be relevant on remand, we briefly address them.

Flores-Alvarado argues that the incidents underlying the Stokesdale and Lexington Seizures were attempts to commit crimes to which a lower offense level should apply.  See U.S.S.G. § 2X1.1(b)(1) (where offense of conviction is "an attempt," base offense level is three levels lower than base offense level under Guideline governing the completed substantive offense). By its own terms, however, § 2X1.1 does not apply to attempts, solicitations, or conspiracies that are "expressly covered by another offense guideline section."  U.S.S.G. § 2X1.1(c)(1). Because the Guideline governing drug offenses expressly covers attempts and conspiracies, see U.S.S.G. § 2D1.1, § 2X1.1 is therefore inapplicable to this case.  See U.S.S.G. § 2X1.1, cmt. n.1 (noting that § 2D1.1 expressly covers attempts).

(Continued)

15

must resolve the factual disputes surrounding the drug quantities involved in the Stokesdale and Lexington Seizures and must "make particularized findings" as to whether the challenged quantities were within the scope of Flores-Alvarado's agreement to jointly undertake criminal activity and whether those drug quantities were reasonably foreseeable to Flores-Alvarado. Bolden, 325 F.3d at 499; see U.S.S.G. § 1B1.3, cmt. n.2.[4]

VACATED AND REMANDED

---

We likewise reject Flores-Alvarado's argument that the life sentence imposed by the district court violated the Eighth Amendment. Flores-Alvarado is a repeat drug felon involved in a large-scale conspiracy who was, by his own admission, involved in the distribution of thousands of pounds of marijuana. Under the circumstances of this case, a sentence of life imprisonment was constitutionally permissible. See United States v. Kratsas, 45 F.3d 63, 68 (4th Cir. 1995) ("[A] mandatory sentence of life imprisonment without release, as applied to a repeat drug offender, d[oes] not run afoul of the Eighth Amendment's prohibition against cruel and unusual punishment here.").

[4] We deny Flores-Alvarado's request that the case be re-assigned to a new judge on remand.

16