**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4545**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM JAMES SPRINGER,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley.  Irene C. Berger, District Judge.  (5:17-cr-00212-1)

Argued:  September 20, 2019                    Decided:  October 15, 2019

Before MOTZ, KING, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David Bungard, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant.  Kathleen Elizabeth Robeson, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Christian M. Capece, Federal Public Defender, Jonathan D. Byrne, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Michael B. Stuart, United States Attorney, Charleston, West Virginia, John L. File, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Beckley, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Springer pled guilty to a single count of distribution of oxymorphone, a controlled substance, and received a sentence of 96 months imprisonment and five years of supervised release. He appeals, challenging the district court's application of a two-level sentencing enhancement for possession of a dangerous weapon and contending that the district court abused its discretion in imposing a five-year term of supervised release. For the following reasons, we affirm.

I.

Springer's conviction arises from an investigation into illegal drug trafficking in Greenbrier County, West Virginia. Officers conducted several "controlled buys" of oxymorphone tablets from Springer and his associates, Joshua Smith and Jessica Honaker. In connection with the investigation, twenty-one oxymorphone tablets were purchased from Springer for a total of $2,030 and six tablets were purchased from Smith and Honaker for a total of $770.

On December 2, 2016, officers executed a search warrant of Smith and Honaker's residence. Officers found Tremaine Pool, Springer's nephew, lying on a mattress in the living room. Underneath a couch in the living room were a 9 mm handgun with the serial number removed and a large quantity of oxymorphone tablets.

Pool told investigators that the handgun and oxymorphone tablets belonged to him. Pool admitted to selling approximately 260 tablets from Smith and Honaker's residence,

2

and said that Springer had supplied him with the tablets, introduced him to Smith, and arranged for his transportation to the residence.

Based on the controlled buys, the Government charged Springer with six counts of distribution of oxymorphone, in violation of 21 U.S.C. § 841(a)(1). He pled guilty to one count, preserving his right to appeal any decision or finding by the district court that the dangerous weapon enhancement under Section 2D1.1(b)(1) of the Sentencing Guidelines applied. In connection with his guilty plea, Springer stipulated that he had distributed, or been involved in distributing, approximately 300 oxymorphone pills in Greenbrier County.

At the sentencing hearing, the district court applied a two-level enhancement for possession of a dangerous weapon. *See* U.S.S.G. § 2D1.1(b)(1). The enhancement was based on Pool's possession of the handgun, which the court attributed to Springer as "relevant conduct" under Section 1B1.3 of the Sentencing Guidelines. In holding that the enhancement applied, the court found that Springer could have reasonably foreseen Pool's possession of a firearm given the ubiquity of firearms in the drug trafficking trade, the quantity of drugs involved in Springer and Pool's operation, and the fact that, at Springer's behest, Pool had been "bringing drugs to and staying with people he didn't otherwise know."

The Guideline range was 100 to 125 months' imprisonment; the court varied downwards to 96 months. The district court also sentenced Springer to five years of supervised release — an upward variance from the Guideline range of three years. Noting Springer's criminal history, substance abuse issues, and lack of education, the district court stated that "a lengthier term of supervised release will provide additional support and

supervision to both assist Mr. Springer in returning to society and to protect the public after his completion of a term of imprisonment." Springer noted a timely appeal.

## II.

Springer contends that the district court clearly erred in finding that he could have reasonably foreseen Pool's possession of a firearm. Springer also contends that the district court's imposition of a five-year term of supervised release was substantively unreasonable. We review criminal sentences for reasonableness "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

## A.

"In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Fluker*, 891 F.3d 541, 547 (4th Cir. 2018) (alterations omitted).

Section 2D1.1(b)(1) of the Sentencing Guidelines provides that the base offense level of a drug offense is increased two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Under the relevant conduct provisions of the Guidelines, Springer is subject to the enhancement if Pool's possession of the firearm was "(i) within the scope of [Springer and Pool's] jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

Springer contends that the district court clearly erred in finding that he could reasonably foresee Pool's possession of a firearm. In determining whether an act or omission was reasonably foreseeable for purposes of the relevant conduct provisions, we consider both the nature of the offense and the circumstances of the case. *See United States v. Kimberlin*, 18 F.3d 1156, 1160 (4th Cir. 1994); U.S.S.G. § 1B1.3 cmt. n.3(D). In *Kimberlin*, we held that in drug trafficking cases, "absent evidence of exceptional circumstances, it is fairly inferable that a codefendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." *Kimberlin*, 18 F.3d at 1160 (alterations omitted); *accord United States v. Gomez-Jimenez*, 750 F.3d 370, 381 (4th Cir. 2014).

Here, the district court cited the large quantity of oxymorphone Springer and Pool had distributed in West Virginia — Springer stipulated that he had been involved in distributing approximately 300 oxymorphone pills in Greenbrier County. The court also noted that Pool, at Springer's direction, had been "bringing drugs to and staying with people he didn't otherwise know" — a potentially perilous undertaking. Although this is a close case, the district court's finding that Pool's possession of a firearm was reasonably foreseeable to Springer does not constitute clear error.

Springer argues that the operation in which he played a part "was not the kind of large-scale operation which suggests that firearms will inevitably become involved," Opening Br. at 16, and notes that the drug conspiracy at issue in *Kimberlin* involved fifteen kilograms of cocaine. *See Kimberlin*, 18 F.3d at 1158. To be sure, the strength of any

inference that a defendant could reasonably foresee a co-defendant's possession of a firearm depends on "the circumstances of the case," *see id.* at 1160, including the quantity of drugs involved, as the Government acknowledged at oral argument. Here, Springer distributed upwards of $25,000 worth of oxymorphone tablets and did so by arranging for Pool to sell the drugs from the home of people he did not otherwise know. While these facts do not compel the district court's finding that Pool's possession of a firearm was reasonably foreseeable to Springer, they are sufficient for us to conclude that the finding does not constitute clear error.

Springer also argues that the dangerous weapon enhancement should not be applied in all drug cases involving firearms, and notes that for the enhancement to be applied under the relevant conduct provisions, the firearm must fall within the scope of jointly undertaken criminal activity. *See* U.S.S.G. § 1B1.3(a)(1)(B). We agree.[1] Here, Pool's firearm was found in proximity to a large quantity of oxymorphone that Springer had arranged for Pool to distribute. This adequately supports the district court's finding that the firearm was within the scope of Springer and Pool's joint criminal activity. *See United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997) (holding that the "proximity of guns to illicit narcotics" can support application of the dangerous weapon enhancement).

---

[1] We do not agree, however, with Springer's contention that the question of scope goes to whether a co-defendant's conduct is reasonably foreseeable. Scope and reasonable foreseeability are independent inquiries under Section 1B1.3(a)(1)(B). *See United States v. Flores-Alvarado*, 779 F.3d 250, 255–56 (4th Cir. 2015).

6

Springer argues that "[t]here was no evidence that Springer's agreement with Pool to enter into a criminal scheme included the possession of firearms." Opening Br. at 15. This argument is unavailing. The question is not whether Springer and Pool agreed to possess firearms; the question is whether possession of a firearm was within the scope of their agreement to distribute oxymorphone.

Finally, Springer contends that this case "lacks the factors that have led courts to find that possession of a firearm by a confederate was reasonably foreseeable to the defendant": this is not a case, like *Kimberlin*, "where the defendant actually saw a confederate with a gun in his hands," nor is it a case, like *Gomez-Jimenez*, "where the defendant helped maintain [a] home that was being used as a location to distribute drugs and where firearms were stored." Opening Br. at 14–15. Springer reads our precedents too narrowly. In *Kimberlin* and *Gomez-Jimenez*, we merely described relevant facts that supported the district courts' foreseeability findings. *See Kimberlin*, 18 F.3d at 1160; *Gomez-Jimenez*, 750 F.3d at 382. We have never *required* that a defendant participate in setting up a drug house or have actual knowledge of a firearm in order to apply the dangerous weapon enhancement as relevant conduct. Indeed, in *Kimberlin*, we upheld the district court's application of the dangerous weapon enhancement to three co-conspirators, including one co-conspirator for whom we referenced no facts showing actual knowledge. *See Kimberlin*, 18 F.3d at 1160.

B.

Springer additionally challenges his five-year term of supervised release as substantively unreasonable, contending that the sentence is greater than necessary to

7

further the purposes of supervised release.[2]  We disagree.  The district court cited Springer's "criminal history, including [crimes] of violence, as well as . . . substance abuse issues and a lack of education" in imposing the five-year term, and stated that "a lengthier term of supervised release will provide additional support and supervision to both assist Mr. Springer in returning to society and to protect the public after his completion of a term of imprisonment."  These are proper considerations in imposing a term of supervised release, *see* 18 U.S.C. § 3583(c), and the court's imposition of a five-year term was not an abuse of discretion, especially in light of the below-Guidelines term of imprisonment imposed by the court.  *See United States v. Helton*, 782 F.3d 148, 155 (4th Cir. 2015).

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[2] At oral argument, counsel for Springer confirmed that Springer challenges the supervised release term on substantive reasonableness grounds.