**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-4624**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BRIAN THOMAS BRIGHT,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, District Judge. (1:22-cr-00401-LCB-3)

_____

Argued:  September 10, 2024                          Decided:  January 3, 2025

_____

Before DIAZ, Chief Judge, WYNN, and THACKER, Circuit Judges.

_____

Vacated and remanded by published opinion.  Judge Thacker wrote the opinion, in which Chief Judge Diaz and Judge Wynn concurred.

_____

**ARGUED:**  Aaron Bader Wellman, IVEY, MCCLELLAN, SIEGMUND, BRUMBAUGH & MCDONALD, LLP, Greensboro, North Carolina, for Appellant.  Julie Carol Niemeier, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:**  Sandra J. Hairston, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

THACKER, Circuit Judge:

Brian Thomas Bright ("Appellant") pled guilty to conspiracy to possess with intent to distribute fentanyl and was sentenced to 97 months of imprisonment. The primary issue on appeal is the application of the United States Sentencing Guidelines ("Guidelines") § 3B1.1(b) enhancement for a managerial role.

Because the district court committed procedural error when it failed to make necessary findings as to this enhancement as required per *United States v. Evans*, 90 F.4th 257, 262–63 (4th Cir. 2024), we vacate and remand.

I.

Between September 2021 and January 2022, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives, in cooperation with local law enforcement agencies in the Sanford, North Carolina area, coordinated a series of controlled buys of narcotics using a confidential informant ("CI"). Over several months, the CI bought drugs from many different individuals, including Appellant. Most of the drug buys relevant to Appellant began with the CI meeting Keyonta McDougald. McDougald facilitated five drug buys with Appellant for the CI. In four instances, McDougald bought heroin (that turned out to be fentanyl) from Appellant to give to the CI. In another instance, the CI went to McDougald's house to buy fentanyl. According to McDougald, in another instance, Appellant sent Larry Bernard Brown to sell the CI and McDougald fentanyl because Appellant was not available.

After Appellant terminated his relationship with McDougald, the CI went to Appellant's house alone to buy fentanyl. Appellant, with the assistance of William Samuel

2

Pergerson, sold the CI fentanyl. McDougald explained to agents that Pergerson served as Appellant's lookout and middleman during transactions by retrieving and preparing for sale fentanyl that Appellant kept hidden on his property. Otherwise, McDougald did not tie Appellant to any other defendants. Appellant admitted that he directed Pergerson to act as his lookout and middleman.

During this window McDougald also facilitated the purchases of other drugs by the CI from individuals other than Appellant. These purchases primarily concerned the purchase of methamphetamine from Rosa Raquel Diaz and Hugo Enrique Olvera Sanchez. Diaz also indicated to law enforcement that she had separately purchased heroin from Appellant.

Appellant and seven others -- McDougald, Brown, Pergerson, Robert Terrell Bush, Diaz, Sanchez, and Tyquan Jones -- were indicted on a single count of conspiracy to possess with intent to distribute fentanyl, methamphetamine, heroin, and cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and 841(b)(1)(C). Each defendant was attributed specific quantities of controlled substances. Appellant's involvement in the conspiracy related to fentanyl.

Appellant pled guilty to conspiracy to possess with intent to distribute 40 grams or more of fentanyl. The Presentence Investigation Report ("PSR") calculated Appellant's base offense level as 26, based on the quantity of fentanyl Appellant distributed. It also increased Appellant's offense level by three points pursuant to Guidelines § 3B1.1(b), concluding Appellant was a manager or supervisor of criminal activity involving five or more participants or that was "otherwise extensive." The PSR then deducted three points

3

for acceptance of responsibility. This resulted in a total offense level of 26, and a sentencing guideline range of 78 to 97 months, given that Appellant's criminal history category was III. At sentencing, Appellant objected to the three-level offense level increase as to his aggravating role in the conspiracy. Appellant contended that a two-level offense increase, resulting in a total offense level of 25, was appropriate because the criminal activity involved less than five participants.

Because this appeal turns on the application of Guidelines § 3B1.1, we describe the events at sentencing in some detail. At the sentencing hearing, the district court heard argument from both Appellant and the Government as to whether a two-level or three-level increase should apply pursuant to Guidelines § 3B1.1. Appellant argued that, although the larger conspiracy involved more than five participants, "[Appellant's] sort of corner of the conspiracy or his conspiratorial activities with Mr. McDougald and Mr. Pergerson did not encompass five or more participants and instead [was] really just the three of them." J.A. 58.[1] The district court responded, "I've got Brown, Diaz, Pergerson, McDougald." J.A. 58. Appellant then argued that "how we assess jointly undertaken criminal activity under 1B1.3, . . . establishes a limiting principle to [Appellant's] criminal responsibility." J.A. 60. The Government countered that the three-level increase was appropriate because eight individuals had been indicted in the conspiracy, so "the criminal activity involved five or more participants." J.A. 61 (quoting U.S.S.G. § 3B1.1).

After hearing from both parties, the district court stated:

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

I don't think the law supports what [Appellant is] asking me to do. I think what we have here -- and this gentleman had a fairly significant role in this conspiracy. He may not have known everybody that touched these drugs or everybody that distributed them, but that is not a requirement.

I do believe that the three points does, in fact, apply in this circumstance because of the amount of drugs that was involved, the manner in which -- he was almost the go-to person to get drugs to distribute to somebody else, and when they couldn't get to him, they'd go to somebody else. So he was actively involved in this conspiracy. I do think that the three-level enhancement is appropriate . . . .

J.A. 62.

The district court thus found that the total offense level was 26 and Appellant's criminal history category was III, which resulted in a sentencing range of 78 to 97 months. The district court then sentenced Appellant to 97 months of imprisonment.

Appellant timely appealed.

II.

"We evaluate the sentence imposed by a district court for abuse of discretion, 'which translates to review for reasonableness.'" *United States v. Evans*, 90 F.4th 257, 261–62 (4th Cir. 2024) (quoting *United States v. Crawford*, 734 F.3d 339, 341–42 (4th Cir. 2013) (internal quotation marks omitted)). "A sentence is procedurally unreasonable if the district court committed a serious procedural error, such as improperly calculating the Guidelines range." *United States v. Morehouse*, 34 F.4th 381, 387 (4th Cir. 2022) (quoting *United States v. Gillespie*, 27 F.4th 934, 944 (4th Cir. 2022) (internal quotation marks omitted)). "In determining whether a district court properly applied the advisory Guidelines, including application of any sentencing enhancements, we review the district

5

court's legal conclusions *de novo* and its factual findings for clear error." *Id.* (quoting *United States v. Layton*, 564 F.3d 330, 334 (4th Cir. 2009) (internal quotation marks omitted)). "But that [clear error] review can be undertaken only if a district court first makes the findings necessitated by the relevant legal standard." *Evans*, 90 F.4th at 262 (citing *United States v. Flores-Alvarado*, 779 F.3d 250, 254–56 (4th Cir. 2015), *as amended* (Mar. 11, 2015)).

## III.

On appeal, Appellant argues that the district court procedurally erred in imposing the three-level increase in Guidelines § 3B1.1(b) because his criminal activity did not involve five or more participants or was not otherwise extensive. The Government contends that the criminal activity includes the entire scope of the conspiracy that was charged, which includes all eight defendants. And, thus, in the Government's view, there were more than five participants in this larger criminal activity.

## A.

Guidelines § 3B1.1 provides for varying offense level increases based on a defendant's role in the offense. Relevant here, it provides for a three-level increase if "the defendant was a manager or supervisor[2] (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). It provides for a two-level increase if "the defendant was an organizer, leader,

---

[2] Appellant admits that he managed Pergerson: "We are not disputing the issue of whether [Appellant] was supervising or directing the activities of Mr. Pergerson." J.A. 57.

manager, or supervisor in any criminal activity other than described in (a)[3] or (b)." *Id.* § 3B1.1(c).

Therefore, the correct questions in order to determine whether a three-level increase or a two-level increase is applicable are: 1) "What was the criminal activity?"; and 2) "Was the criminal activity 'otherwise extensive?'" *See* U.S.S.G. §§ 3B1.1(b)–(c). The commentary to Guidelines § 3B1.1 defines a "participant" as "a person who is criminally responsible for the commission of the offense[] but need not have been convicted." *Id.* § 3B1.1 cmt. n.1.

The Government argues that reference to Guideline § 3B1.1 is the end of the inquiry. The Government is wrong. The "Relevant Conduct" section of the Guidelines, § 1B1.3, counsels that "adjustments in Chapter Three, shall be determined on the basis of the following":

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> > (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were --
> > > (i) within the scope of the jointly undertaken criminal activity,
> > > (ii) in furtherance of that criminal activity, and
> > > (iii) reasonably foreseeable in connection with that criminal activity;

---

[3] Guidelines § 3B1.1(a) provides, "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1.

> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

U.S.S.G. § 1B1.3(a)(1)(A)–(B).

The Guidelines' commentary[4] elaborates: "In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." U.S.S.G. § 1B1.3 cmt. n.3(B). This commentary -- requiring the court to determine the "scope of the criminal activity the particular defendant agreed to jointly undertake" -- echoes the language in Guidelines § 3B1.1. *See id.* § 3B1.1(b) (using the phrase "criminal activity").

The Government argues that no authority supports reading Guidelines § 1B1.3 to require that only "jointly undertaken" criminal activity by co-conspirators be construed as relevant conduct. Government's Resp. Br. at 16–17. But Guidelines § 1B1.3 clearly applies when interpreting Guidelines § 3B1.1. Indeed, the introductory language of

---

[4] Neither party briefed the applicability of our holding in *United States v. Campbell*, 22 F.4th 438, 445 (4th Cir. 2022). There, we held that the Supreme Court's decision in *Kisor v. Wilkie*, 588 U.S. 558 (2019) governs our treatment of the commentary to the sentencing guidelines. *Campbell*, 22 F.4th at 445; *see also United States v. Mitchell*, 120 F.4th 1233, 1239 (4th Cir. 2024) ("*Campbell alternatively held* that *Kisor* applies to the Guidelines.") (emphasis in original). We may consider the commentary here because resolution of this case requires us to interpret the ambiguous phrases "criminal activity" in Guidelines § 3B1.1 and "jointly undertaken criminal activity" in Guidelines § 1B1.3.

Guidelines § 1B1.3 provides that it applies when courts determine "adjustments in Chapter Three" -- and Guidelines § 3B1.1 is in Chapter Three of the Guidelines. U.S.S.G. § 1B1.3.

Moreover, we have recognized that, for sentencing purposes, courts must address relevant conduct per Guidelines § 1B1.3. *See United States v. Flores-Alvarado*, 779 F.3d 250, 255–56 (4th Cir. 2015), *as amended* (Mar. 11, 2015) ("'[I]n order to attribute to a defendant for sentencing purposes the acts of others in jointly-undertaken criminal activity' . . . we require sentencing courts to 'make *particularized* findings with respect to *both* the scope of the defendant's agreement *and* the foreseeability of [the conduct at issue].'" (emphases in original) (first quoting *United States v. Gilliam*, 987 F.2d 1009, 1012–13 (4th Cir. 1993); and then quoting *United States v. Bolden*, 325 F.3d 471, 499 (4th Cir. 2003) ("[A] sentencing court, in order to hold a defendant accountable for the conduct of his coconspirators, should make particularized findings with respect to . . . § 1B1.3(a)(1)(B)."))).

Notably, we have recently differentiated between substantive *Pinkerton*[5] liability and Guidelines accountability for conspiracy offenses pursuant to Guidelines § 1B1.3(a)(1)(B). *See United States v. Evans*, 90 F.4th 257, 262–64 (4th Cir. 2024). In *Evans*, the district court used the *Pinkerton* liability standard instead of the Guidelines § 1B1.3 standard to determine a defendant's accountable drug weight for sentencing purposes. *Id.* at 260. But we explained that "for purposes of sentencing, the Guidelines

---

[5] *Pinkerton v. United States*, 328 U.S. 640, 647 (1946) (holding that a defendant may be held vicariously liable for the acts of his co-conspirators so long as those acts are within the scope of the conspiracy as a whole and reasonably foreseeable to the defendant).

have adopted a different and narrow principle of accountability" compared to *Pinkerton*. *Id.* at 262–63 (citing U.S.S.G. § 1B1.3 cmt. n.1). Thus, we held that "before, say, drugs seized from a co-conspirator may be attributed to a defendant at sentencing, a district court must make '*particularized* findings' as to the scope of the defendant's agreement to jointly undertake criminal activity as well as to foreseeability." *Id.* at 263 (quoting *Flores-Alvarado*, 779 F.3d at 256) (quoting *Bolden*, 325 F.3d at 499) (emphasis in original).

The district court in *Evans* did not apply the Guidelines § 1B1.3 standard for relevant conduct or consider the scope of the defendant's agreement to jointly undertake criminal activity. Instead, it asked only whether the drugs seized from a co-conspirator were "within the scope of 'the entire conspiracy,' [and concluded] that they could be attributed" to the defendant because they met the *Pinkerton* liability standard. *Evans*, 90 F.4th at 263. We remanded for the district court to make the necessary factual findings pursuant to the proper Guidelines § 1B1.3(a)(1)(B) standard. *Id.* at 263, 265. However, at the time of sentencing in this case, the district court was without the benefit of *Evans*.

### B.

Here, the district court did not make particularized findings regarding the scope of the criminal activity before imposing the three-level enhancement pursuant to Guidelines § 3B1.1(b). Nor did the district court determine that the criminal activity was "otherwise extensive." U.S.S.G. § 3B1.1(b). The district court simply stated during Appellant's sentencing argument, "I've got Brown, Diaz, Pergerson, McDougald." J.A. 59. The district court also noted that Appellant "had a fairly significant role in this conspiracy" and even though he "may not have known everybody that touched these drugs or everybody

10

that distributed them . . . that is not a requirement." J.A. 62. However, because Guidelines § 1B1.3 applies when determining adjustments in Chapter Three, including Guidelines § 3B1.1, the district court should have made the "particularized findings" required by Guidelines § 1B1.3(a)(1)(B) as to the scope of the jointly undertaken criminal activity, whether the acts and omissions of others were in furtherance of that criminal activity, and whether the acts and omissions were reasonably foreseeable to Appellant. U.S.S.G. § 1B1.3(a)(1)(B)(i)- (iii). When the district court makes its particularized findings regarding Guidelines § 1B1.3(a)(1)(B)(i)-(iii), the district court has defined the "jointly undertaken criminal activity" that it can consider as relevant conduct when applying Guidelines § 3B1.1 adjustments. *Id.* § 1B1.3(a)(1)(B).

To warrant the three-level enhancement, Appellant did not need to know everyone who touched the drugs, but he did have to agree to jointly undertake the criminal activity. After determining the scope of the criminal activity (for example, conspiracy to possess and distribute fentanyl), the district court should then determine the number of participants in that criminal activity. Additionally, Appellant argued below that his criminal activity was not "otherwise extensive," but the district court made no findings on this issue. U.S.S.G. § 3B1.1(b).

In sum, the district court conflated the standard for substantive *Pinkerton* liability with the standard for sentencing accountability pursuant to Guidelines § 1B1.3, which was significant procedural error. Because the district court did not make the requisite Guidelines § 1B1.3 findings that we required in *Bolden* and *Flores-Alvarado* and re-emphasized in *Evans*, it is unclear what the district court thought the criminal activity

11

encompassed or how many participants the district court found were involved in such criminal activity. 325 F.3d at 499; 779 F.3d at 256; 90 F.4th at 263. And "we are not permitted to guess at the district court's rationale by 'searching the record for statements . . . that might explain a sentence.'" *United States v. Provance*, 944 F.3d 213, 219 (4th Cir. 2019) (quoting *United States v. Blue*, 877 F.3d 513, 521 (4th Cir. 2017)).

Therefore, although we express no view as to the ultimate resolution of Appellant's challenge to the enhancement in this case, we vacate Appellant's sentence and remand for resentencing in order for the district court to make the requisite particularized findings required pursuant to Guidelines § 1B1.1, or to find that the criminal activity was "otherwise extensive." U.S.S.G. § 3B1.1(b).

## IV.

Based on the foregoing, we vacate Appellant's sentence and remand for resentencing proceedings consistent with this opinion.

*VACATED AND REMANDED*