**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4295**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

TERRANCE NATHANIEL BROWN, JR., a/k/a War, a/k/a War Stone, a/k/a Luciano,

Defendant – Appellant.

**No. 18-4316**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MICHAEL JONES, a/k/a M. Stone,

Defendant – Appellant.

**No. 18-4317**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CLIFFORD ALEXANDER JENNINGS, a/k/a Big Cliff, a/k/a Wolverine, a/k/a Ethiopia, a/k/a Certified, a/k/a Mr. Certified,

Defendant – Appellant.

Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Michael F. Urbanski, Chief District Judge. (7:16-cr-30026-MFR-4; 7:16-cr-30026-MFU-1; 7:16-cr-30026-MFU-5)

Argued: January 31, 2020                                    Decided: May 1, 2020

Before WILKINSON, AGEE, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge Thacker wrote an opinion dissenting in part.

**ARGUED:** Paul Graham Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia; Juval Orisha Scott, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia; Lawrence Hunter Woodward, Jr., RULOFF, SWAIN, HADDAD, MORECOCK, TALBERT & WOODWARD, P.C., Virginia Beach, Virginia, for Appellants. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Frederick T. Heblich, Jr., Interim Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellants. Brian A. Benczkowski, Assistant Attorney General, Matthew S. Miner, Deputy Assistant Attorney General, Marianne Shelvey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Thomas T. Cullen, United States Attorney, Roanoke, Virginia, Grayson A. Hoffman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Harrisonburg, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

2

PER CURIAM:

Co-defendants Michael Jones, Terrance Brown, and Clifford Alexander Jennings (collectively "Defendants-Appellants") challenge their convictions for conspiracy to distribute heroin, cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. §§ 841 and 846. In addition, Brown contends the district court erred by dismissing without prejudice two counts of violent crimes in aid of racketeering and two related firearms counts, arguing that dismissal should have been with prejudice because the court acted in the context of a Federal Rule of Criminal Procedure 29 challenge to the Government's evidence establishing venue. Lastly, Brown and Jennings challenge the procedural reasonableness of their sentences, claiming the district court miscalculated their Sentencing Guidelines ranges by attributing an excessive drug weight to their offense conduct. Because no reversible errors occurred, we affirm.

I.

The Defendants-Appellants are members of the Mad Street Bloods ("MSBs"), a gang founded in Rikers Island prison that still is centrally run out of New York City. The MSBs have a pyramid hierarchy structure with tiers of leadership within various sets. The head of each set is known as a Godfather. Jones was a Godfather of one New York set, the Mad Stone Henchmen. The New York MSBs oversee sets and members in other states, including Virginia.

While less tightly run as the New York MSBs, the Virginia MSBs have a similar pyramid structure with tiers of leadership within similarly named sets. Brown was an acting

3

Godfather of one Virginia set until the New York MSBs demoted him, and Jennings was also a Godfather of a Virginia set.

In 2012, law enforcement began using Adrienne Williams—a member of a female set of MSB in Virginia—as a confidential informant. She continued in that role, for which she was paid, for four years. Throughout that time, law enforcement had Williams coordinate controlled buys of illegal drugs, and she wore a wire for hundreds of recorded conversations with both New York and Virginia MSB members, including conversations with Jones, Brown, and Jennings.

In 2016, twelve MSB members were named in an indictment, which was later superseded, in the U.S. District Court for the Western District of Virginia, alleging violations of federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and drug laws, as well as related underlying substantive offenses. The Defendants-Appellants exercised their right to a jury trial and were tried together. At the close of the Government's case, Brown moved for a judgment of acquittal on the four underlying substantive counts, arguing the Government failed to prove venue was proper in the Western District of Virginia. The district court agreed and dismissed the four firearms charges without prejudice. As a result, the court charged the jury with deciding only two counts for each of the Defendants-Appellants: conspiracy to violate RICO and drug conspiracy. The jury found each one not guilty of the RICO conspiracy and guilty of the drug conspiracy.

Thereafter, the district court conducted individualized sentencing hearings for the Defendants-Appellants. It sentenced Jones to 41 months' imprisonment, Brown to 240 months' imprisonment, and Jennings to 144 months' imprisonment.

4

Jones, Brown, and Jennings noted timely appeals, which the Court consolidated for briefing and argument. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

### A.

We begin by considering two challenges to the sufficiency of the evidence to support the convictions. First, the Defendants-Appellants challenge the sufficiency of the evidence to support their drug conspiracy conviction, arguing the evidence adduced at trial was insufficient to prove the existence of the single, overarching conspiracy alleged in the indictment. They do not assert the existence of a variance between the indictment and the trial evidence; instead, they contend the evidence supported three discrete conspiracies rather than the one overarching conspiracy charged in the indictment. Second, Jones contends that the evidence was insufficient to prove that he knowingly and voluntarily joined the charged drug conspiracy, arguing that he acted solely in New York and never became part of the charged Virginia drug conspiracy. Neither argument has merit.

In this context, although we review de novo a district court's denial of a motion for judgment of acquittal, *United States v. Zelaya*, 908 F.3d 920, 925 (4th Cir. 2018), we review the underlying verdict for substantial evidence, *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018). This means that we will affirm if, viewing the evidence in the light most favorable to the government, there "is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt

5

beyond a reasonable doubt." *United States v. Bran*, 776 F.3d 276, 279 (4th Cir. 2015). In undertaking our review, we cannot "assess witness credibility, and we assume that the jury resolved any conflicting evidence in the prosecution's favor." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (internal quotation marks omitted). To reverse, "the prosecution's failure [must be] clear." *United States v. Palomino-Coronado*, 805 F.3d 127, 130 (4th Cir. 2015) (internal quotation marks omitted).

To establish the charged drug conspiracy, the Government was required to prove beyond a reasonable doubt that "(1) an agreement [to distribute and possess with intent to distribute controlled substances] existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." *United States v. Hackley*, 662 F.3d 671, 678 (4th Cir. 2011) (internal quotation marks omitted). "[A] single overall conspiracy can be distinguished from multiple independent conspiracies based on the overlap in actors, methods, and goals." *United States v. Bartko*, 728 F.3d 327, 344–45 (4th Cir. 2013) (internal quotation marks omitted). "A single conspiracy exists where there is one overall agreement, or one general business venture," *United States v. Stockton*, 349 F.3d 755, 762 (4th Cir. 2003) (internal quotation marks omitted). A single drug conspiracy exists if the defendant "was part of a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." *United States v. Howard*, 773 F.3d 519, 526 (4th Cir. 2014) (internal quotation marks omitted). Importantly, "[t]he question whether the evidence shows a single

6

conspiracy or multiple conspiracies . . . is one of fact and is properly the province of the jury." *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988).

Applying these principles to this case, we observe that the jury was adequately instructed on this issue and we will not disturb its finding that the evidence was sufficient to establish the single, charged conspiracy rather than multiple conspiracies. The district court gave the jury a detailed multiple-conspiracies instruction in addition to standard instructions concerning conspiracy and drug offenses. Here, "as in all cases, juries are presumed to follow the court's instructions." *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009). There is nothing in the record to indicate the jury was unable to make the factual finding that the Government's evidence proved the single charged conspiracy and rejected the Defendants-Appellants' arguments about multiple conspiracies.[1]

Further, the evidence shows that sufficient evidence of the charged conspiracy exists when viewing the record as a whole, and it was proven by more than MSB membership alone. Upon our independent review of the record—and construing the evidence, as we must, cumulatively and in the light most favorable to the Government—we find substantial evidence to support the conclusion that Jones, Brown, and Jennings each participated in a

---

[1] The Defendants-Appellants point to the fact the jury did not have a copy of the indictment during deliberations. But the record shows the court read, nearly verbatim, the indictment's language describing the charged drug conspiracy. What's more, nothing in the record suggests that the jury would have been unable to apply the multiple conspiracies instruction or understand counsel's arguments without a copy of the indictment during deliberations. As such, the district court also acted within its discretion by declining to provide the jury with a copy of the indictment. *See United States v. Polowichak*, 783 F.2d 410, 413 (4th Cir. 1986) ("The submission of an indictment to the jury is a discretionary matter with the district court.").

single, overarching conspiracy of MSB members to distribute and possess with intent distribute controlled substances. Their arguments seek to review isolated pieces of the record and suggest that those pieces could be analyzed differently; that approach turns sufficiency review on its head. When evaluating the sufficiency of the evidence, we must "not examine evidence in a piecemeal fashion, but consider it in cumulative context" to discern "the complete picture that the evidence presents." *United States v. Burgos*, 94 F.3d 849, 863 (4th Cir. 1996) (en banc); *see id.* ("Critical to our review . . . is the *complete picture* that the evidence presents. . . . We must not rend the garment of which the evidence is woven lest we analyze each individual fiber in isolation." (emphasis added)).

Here, the testimony of co-conspirators, cooperating witness Williams, and recorded conversations involving (at various times) each of the Defendants-Appellants connected each one to the sort of "tacit or mutual understanding" required to prove a conspiracy as opposed to merely parallel, yet separate, acts. *See United States v. Gomez-Jimenez*, 750 F.3d 370, 378 (4th Cir. 2014) (internal quotation marks omitted) (recognizing that, given the clandestine nature of illicit conspiracies, the requisite agreement "need not be formal and may instead be a tacit or mutual understanding between the defendant and" other conspirators). Among other things, the evidence showed MSB members fronted drugs to each other, provided good rates to MSB members, and facilitated additional sales to each other based on the understanding that doing so "provid[ed] ways for other gang members to make money." J.A. 757. Further, New York MSB members sold—and facilitated the sale of—drugs to various Virginia MSB members for resale in Virginia, provided guidance and orders connecting gang rank within the gang to drug sales, and encouraged running a

8

"tight[]" drug-sale operation in Virginia. J.A. 2355. And, most importantly, the record connects each of the Defendants-Appellants to various aspects of the charged drug conspiracy, demonstrating more than a "slight connection" to it, which was sufficient to support their conviction for that offense. *Burgos*, 94 F.3d at 861 (internal quotation marks omitted); *United States v. Nunez*, 432 F.3d 573, 578 (4th Cir. 2005) ("Often, the single conspiracy is comprised of a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." (internal quotation marks omitted)).

For related reasons, Jones' challenge to the sufficiency of the evidence that he knowingly and voluntarily participated in this conspiratorial agreement also fails. Important to conspiracy law is our recognition that "one may be a member of a conspiracy . . . without taking part in the full range of its activities or over the whole period of its existence." *United States v. Allen*, 716 F.3d 98, 103 (4th Cir. 2013) (internal quotation marks omitted). "[O]nce a conspiracy has been proved, the evidence need only establish a slight connection between any given defendant and the conspiracy to support conviction." *Id.* Once again, the record adduced at trial, as a whole and viewed in the light most favorable to the Government, allows for the conclusion that Jones knowingly and voluntarily participated in the charged conspiracy. *See Burgos*, 94 F.3d at 863. Jones was the godfather of one New York MSB set; he provided guidance to individuals in the Virginia MSB regarding how to sell drugs and avoid detection; and he facilitated drug deals for them. While Jones is correct that, as a matter, of law, a mere buyer-seller relationship

9

is insufficient and that cooperating witness Williams cannot be one of the co-conspirators, the evidence against him went well beyond those circumstances.

For these reasons, substantial evidence supports the Defendants-Appellants' convictions for the drug conspiracy.

B.

Next, Brown contends that the district court erred in dismissing the four underlying substantive offenses without prejudice after it granted his Rule 29 motion for judgment of acquittal. Brown asserts that the counts should have been dismissed with prejudice, so as to bar re-prosecution, because the Government's failure to prove venue occurred at trial, after jeopardy had attached. *See Evans v. Michigan*, 568 U.S. 313, 319 (2013) (discussing the Double Jeopardy Clause barring retrial following an "acquittal," but not barring retrial following a "procedural dismissal[]").

Prior to argument, we directed the parties to file supplemental briefs related to this claim, at which point the Government argued that changed circumstances since initial briefing had rendered the issue moot. Specifically, the Government indicated that after these counts had been dismissed without prejudice in the Western District, the U.S. Attorney for the Eastern District of Virginia obtained an indictment against Brown that included the dismissed counts. It further indicated that a jury trial had already occurred and that Brown had been acquitted on all four counts, meaning that he could not be re-prosecuted for those charges regardless of the Court's holding in this appeal. The Government asserted that under these circumstances, "a ruling by this Court . . . would give

10

Brown no practical relief," and the Court should conclude that the issue is moot. Gov. Supp. Br. 3.

Brown acknowledges these basic facts in his supplemental brief, but asserts the issue is not moot because the four counts for which he was indicted and tried in the Eastern District are not identical to the Western District counts even though they involve the same conduct. He maintains that obtaining a dismissal with prejudice in this case would reassure him that the Government would not attempt to re-prosecute him. He also contends, for the first time, that the district court may have sentenced him differently if it knew dismissal should have been with prejudice rather than without prejudice. But he admits that a district court is free to consider acquitted conduct and dismissed counts (with or without prejudice) in imposing a sentence.

We agree with the Government that Brown's retrial and acquittal in the Eastern District renders this issue moot. A claim is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (internal quotation marks omitted). Brown raises an issue that is "no longer live" and he lacks a "legally cognizable interest in the outcome" because he has *already* been re-prosecuted in the Eastern District, so it would come too late to prevent re-prosecution. *Id.* What's more, Brown's acquittal in that case provides independent assurance that he cannot be re-prosecuted on these charges. Lastly, he has waived review of his argument about resentencing because the Court will not ordinarily consider an issue raised for the first time in the case in a supplemental brief. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) (stating "an issue first argued in a reply brief is not

11

properly before a court of appeals"); *see also United States v. Leeson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006) (applying this rule to supplemental filings).

## C.

Lastly, both Brown and Jennings argue the district court committed reversible procedural error when calculating their advisory Sentencing Guidelines range. Specifically, Brown asserts the district court committed reversible error by holding him responsible for the equivalent of 180 kilograms of marijuana sold by a co-conspirator because not all of that amount should have been attributed to him as relevant conduct. Jennings, in turn, contends the district court erred in holding him accountable for 400–700 grams of heroin sold by a co-conspirator because the record only established his involvement in the sale of cocaine.[2]

### 1.

The Court reviews the reasonableness of a sentence under a "deferential abuse-of-discretion standard," and improperly calculating the Guidelines range may be a "significant procedural error" that requires the Court to vacate the sentence and remand for

---

[2] In addition, Jennings contends that the district court failed to give adequate notice of its intent to vary upward based on inadequacy of his criminal history. He did not raise this argument below, so we review it for plain error. *See United States v. McClung*, 483 F.3d 273, 276 (4th Cir. 2007). Regardless, the district court committed no error at all because it was not required to provide notice before imposing a variant sentence under 18 U.S.C. § 3553(a). *Irizarry v. United States*, 553 U.S. 708, 714–15 (2008). While a district court must provide reasonable notice of its intent to "depart" from the Guidelines, Fed. R. Crim. P. 32(h), the Supreme Court has recognized a firm distinction between departure sentences under the Guidelines and variant sentences under the § 3553(a) factors. *Irizzary*, 553 U.S. at 714–15. As such, Jennings' argument lacks merit.

resentencing. *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014). But we have also recognized that in certain circumstances any error committed by the district court in calculating a defendant's drug weight is harmless. Under an "assumed error harmlessness" analysis, we "may assume that a sentencing error occurred and proceed to examine whether the error affected the sentence imposed." *United States v. McDonald*, 850 F.3d 640, 643 (4th Cir. 2017). For us to deem a Guidelines error harmless, we must determine: "(1) the district court would have reached the same result even if it had decided the [G]uidelines issue the other way, and (2) the sentence would have been reasonable even if the [G]uidelines issue had been decided in the defendant's favor." *Gomez-Jimenez*, 750 F.3d at 382 (internal quotation marks omitted). Here, even if we assume error as to Jennings, any such error was harmless.

The first requirement, that the district court would reach the same result even if the Guidelines had been calculated in the way advocated by Jennings, is plainly met. When the district court sentenced Jennings it *repeatedly* stated that its drug weight determinations did not affect its sentencing decision, that its sentence was based on the § 3553(a) factors irrespective of its decisions concerning the drug weight and Guidelines calculation, and that it would have imposed the same upward variant sentence regardless of the Guidelines.[3]

---

[3] For example, when sentencing Jennings, the district court explained,

> At the end of the day in this case, my sentence is going to be based on the 3553(a) factors . . . . This drug weight calculation is only a little piece of it. Okay? It's a place to start. But there's a lot of other things to be considered.
> And whether I find . . . below 400 grams or whether I find over 700 grams or

(Continued)

13

This record unequivocally establishes that, for the district court, the Guidelines calculation played a necessary, but ultimately negligible, role in sentencing Jennings. That is more than sufficient to satisfy the first prong of assumed-error harmlessness review.

As for the second requirement, we conclude that Jennings' sentence would have been substantively reasonable even if his Guidelines range had been based on the lower drug weights that he advocated. When sentencing Jennings to an upward variant sentence of 144 months' imprisonment, the district court provided a detailed explanation of the applicable § 3553(a) factors influencing its decision. For example, the district court discussed the seriousness of the offense, Jennings' history and characteristics, and the need for deterrence, promoting respect for the law, and protecting the public. The court emphasized Jennings' unabated life of crime, which had been undeterred by numerous prior offenses that had not been considered as part of his Guidelines range. And it determined that Jennings' history made an upward variant sentence appropriate to protect the public from his continued criminal behavior. Considering the totality of the circumstances, we conclude that Jennings' sentence also was substantively reasonable, even if the amount of the upward variance would have been somewhat greater under the Guidelines range calculation Jennings advocated. For this reason, we affirm Jennings' sentence under an assumed-error harmlessness review.

whether I find in the middle, I'm going to come out on the sentence in the same place—okay?—under the 3553(a) factors, as I will explain.

J.A. 3155–56.

14

2.

We also affirm Brown's sentence under that same standard. But first, we address the procedural error Brown alleges occurred in his sentencing. The probation officer who prepared Brown's PSR attributed the equivalent of 180 kilograms of marijuana to him as "relevant conduct" under § 1B1.3(a)(1)(B) of the Sentencing Guidelines based on Brown being acting Godfather of a Virginia set and therefore having a leadership role over indicted co-conspirator Corey Owens and the drug amounts Owens had stipulated to selling in his plea agreement.[4] Specifically, Owens had stipulated that during the course of the drug conspiracy he had sold 80 to 100 kilograms of marijuana and cocaine in an amount equivalent to 100 to 400 kilograms of marijuana. *See* J.A. 2994. As such, Brown's PSR used the lower values in those ranges to set Brown's attributed drug weight.

At sentencing, Brown objected, arguing, in relevant part, that no evidence connected him to any of Owens' drug sales and that his own sales had been significantly smaller quantities of marijuana. To support this argument, Brown called Owens to testify at the hearing, at which point Owens claimed he was never Brown's subordinate, he'd never seen Brown sell any drugs, and that he'd lied in his plea agreement about selling any cocaine and about the amount of marijuana he'd sold in order to avoid going to trial and risking greater time in prison. But on cross-examination, Owens admitted signing a plea agreement in which he admitted to selling the drug quantities stipulated in his plea agreement. J.A.

---

[4] For instance, evidence introduced at trial included Brown calling Owens his "right-hand man." J.A. 1693, and on one occasion Brown and Owens wagered over who could sell the most "dope" in one day. J.A. 2595.

15

2994. The district court did not credit any portion of Owens's testimony at sentencing, finding him to be completely "incredible and in contrast with the statements that he made when he pled guilty in this case." J.A. 3049.

The Government called Agent Farr to summarize statements from both confidential informant Williams and co-conspirator Anthony Day indicating that Brown and Owens had sold marijuana together and that Brown had once demanded that Owens reimburse him for some marijuana seized from Owens' home by law enforcement because it had belonged to Brown. Farr could not recall the amount of drugs that had been seized on that day, but did recall that both marijuana and cocaine had been seized from Owens' residence at that time. Farr explained that he believed Brown and Owens "were dealing narcotics together" based "on the amount of time they spent together; their interactions at the meetings that they had together; [and] the free manner in which they discussed their activity." J.A. 3027. The district court fully credited this testimony, noting that it had heard Williams and Day's testimony at trial, as well as Farr's recap of that testimony at sentencing, and had the opportunity to compare that testimony to Owens' testimony at trial in assessing why it was appropriate to hold Brown responsible for Owens' sales.

The district court explained at some length why federal sentencing law allowed Brown to be held responsible for any drugs sold that were related to the underlying drug conspiracy and reasonably foreseeable to the defendant. Next, the court pivoted to why it would not matter what drug weight finding it made:

> Regardless of where I come down on the guidelines in this case, I know what the sentence needs to be in this case under the 3553(a) factors. I know what it needs to be. And regardless of whether I found Mr. Brown responsible for

16

all the drug weight attributed to him in the PSR or whether what he thinks he should be responsible for, and that is 3 . . . kilograms of marijuana, I would give the very same sentence in this case, the very same sentence. Not based on the guidelines. The guidelines are advisory. I consider them or not.

J.A. 3048–49. Thereafter, the court summarized the evidence as to Brown's drug sales, crediting testimony that the two conspirators sold marijuana together and that Brown claimed ownership of marijuana seized from Owens' residence. Lastly, the district court adopted the PSR's recommendation and held Brown responsible for the equivalent of 180 kilograms of marijuana.

If the district court had based its sentence only on Brown's Guidelines range, this record might give us pause as to whether Owens's cocaine sales are "relevant conduct" because the district court did not make "particularized findings with respect to *both* the scope of the defendant's agreement *and* the foreseeability of the conduct at issue" before finding the full 180 kilograms of marijuana equivalency to be attributable to Brown. *United States v. Flores-Alvarado*, 779 F.3d 250, 254–57 (4th Cir. 2015). We have previously held that without those findings, we are unable to meaningfully review whether a conspirator's conduct was appropriately attributed to the defendant as part of his Guidelines calculation. *Id.* Here, the evidence presented during the sentencing hearing and cited by the district court related to Brown's knowledge of and participation in marijuana sales, which comprised 80 of the 180 kilograms of marijuana equivalency attributed to him. And although the district court did not make a specific finding as to Owens' cocaine sales, it may not have been clearly erroneous to include them as relevant conduct given the

closeness of Owens' and Brown's interactions, as described by Agent Farr. Regardless, we conclude that any error was ultimately harmless.

The complete sentencing transcript reveals unambiguously that the district court sentenced Brown based on its consideration of the § 3553(a) factors and that the Guidelines calculation played no role in the sentence the court ultimately imposed apart from being a necessary starting point. The assumed-error harmlessness review exists for precisely this situation. As we have previously explained, "it would make no sense to set aside [a] reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm." *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) (internal quotation marks omitted); *see also United States v. Revels*, 455 F.3d 448, 452 (4th Cir. 2006) (observing that resentencing where it is clear from the record that a Guidelines calculation error was harmless would be "little more than an empty formality, for the sentence the district court would impose on remand is a foregone conclusion").

The first part of the inquiry is readily satisfied in this case given the district court's repeated statements that it would impose the same sentence under § 3553(a) regardless of which drug weight it selected. In addition to the statement quoted above, the district court later reiterated, "[r]egardless of the guidelines finding I made in this case, I would give the same sentence, because this is the most dangerous conduct involved with drug dealing that I have seen in my years as a United States District Judge." J.A. 3070. The district court expressly and repeatedly stated that it "would have reached the same result even if it had decided the [G]uidelines issue the other way." *Gomez-Jimenez*, 750 F.3d at 382.

18

Based on the governing legal standards, we also conclude that Brown's sentence is substantively reasonable, meaning that the second part of the inquiry is also satisfied. Brown's 240-month sentence was the statutory maximum, 21 U.S.C. § 841(c)(1) (2012), and varied upward by five months from his calculated Guidelines range. But the sentence represents a significant upward variance of 194 months from the range Brown advocated. While that extent of a variance requires the district court to provide a more thorough explanation of its reasoning, it is not per se unreasonable and, as noted, the district court gave a detailed explanation of why it was imposing the sentence. *See United States v. Hargrove*, 701 F.3d 156, 163 (4th Cir. 2012). To the contrary, the Supreme Court and we have recognized that when reviewing an upward variant sentence, we must "consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007). This means that "a major departure should be supported by a more significant justification than a minor one," *id.* at 50, but "a district court need not justify a sentence outside the Guidelines range with a finding of extraordinary circumstances." *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (internal quotation marks omitted).

When it sentenced Brown, the district court discussed the relevant § 3553(a) factors, focusing on the seriousness of the offense, the need to promote respect for the law, provide just punishment, protect the public, and promote specific and general deterrence. With respect to the Guidelines, the court indicated that although they were the starting point, they were "advisory," "not binding," and—most notably—"[t]he only thing that's binding

19

on me is the sentence should be zero to 20 years. Zero to 240 months." J.A. 3066. Plainly, the district court was looking at what sentence was authorized under statute, not the Guidelines, when it explained how it selected the appropriate sentence.

Next, the court observed that Brown's conduct fell outside the heartland of drug conspiracy cases because his egregious acts of violence and "callous disregard for human life," which was part of a conspiracy, were unlike any it had "seen before in the 14 years that I've been on the bench." J.A. 3066. The court elaborated that it had "never seen the level of violence, the level of danger, the level of callous disregard for human life that I have seen in the drug conspiracy in this case. . . . It is the worst thing in our society, the callous disregard for human life." J.A. 3066. And it then reiterated that "the evidence I heard in this case with regard to the violent acts you engaged in associated with your drug dealing is the worst I've heard in any case that I've presided over as a United States District Judge." J.A. 3067. After describing some of the specific evidence of violent conduct, the court summarized that this conspiracy was "about violence and drug dealings," J.A. 3067, and while Brown may have been a minor drug dealer, he played an integral role in the violent side of the drug conspiracy.[5] The district court also noted Brown's "life of crime,"

---

[5] The dissent takes particular issue with the district court's reliance on Brown's violent conduct as part of its § 3553(a) explanation because Brown was subsequently acquitted on charges related to some of it when he was tried in the Eastern District of Virginia. *Infra*, at 27. Yet a judge's personal disagreement  is irrelevant given the well-settled rule that district courts can "consider uncharged or even acquitted conduct during sentencing" so long as it is supported by at least a preponderance of the evidence. *United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009). It is clear from the record that standard was met here.

the need to promote respect for the law given that "Brown has demonstrated absolutely no respect for the law," J.A. 3068–69, and the need to provide just punishment and both general and specific deterrence. Notably, the court compared these concerns against Brown's mitigating evidence, but ultimately found the record to support the statutory maximum sentence. Indeed, the court concluded its explanation by stating that Brown's conduct "crie[d] out" for the statutory maximum and that it would have imposed a *higher* sentence if one had been authorized by statute. J.A. 3070.

Viewing the totality of this explanation and affording requisite deference to the court's § 3553(a) assessment, we conclude the district court acted within its considerable discretion to impose a 240-month sentence. *Gomez-Jimenez*, 750 F.3d at 383–84 (observing that a district court's sentence generally will be substantively reasonable if it provides a "thorough and persuasive" analysis of the § 3553(a) factors, considering the defendant's arguments and addressing the case's "individual circumstances"). Brown's sentence is substantively reasonable and thus satisfies the second inquiry under the assumed-error harmlessness analysis. Accordingly, we affirm his sentence.

III.

For the reasons set out above, we affirm the district court's judgments against Jones, Brown, and Jennings.

*AFFIRMED*

21

THACKER, Circuit Judge, dissenting, in part:

I dissent solely with respect to the sentencing of Appellant Terrance Nathaniel Brown, Jr. I have grave concerns that following this case, with a wave of the hand and the disclaimer that the sentence imposed *for a drug distribution conspiracy* would be the same *regardless of the quantity of drugs distributed*, district courts can essentially disregard the relevant Sentencing Guidelines range and count on us to credit their 18 U.S.C. § 3553(a) analysis as sufficient, even absent a requisite finding as to the nature and scope of the conduct at issue.

Therefore, for the reasons set forth below, I would remand for resentencing so that adequate factual findings can be made on the record with regard to Brown's purported responsibility for his co-conspirator's drug weight.

I.

At sentencing, Brown objected to the drug weight calculation in his presentence investigation report ("PSR"). Specifically, he contended that his Sentencing Guidelines range was overstated because the base offense level calculation attributed to him 180 kilograms of marijuana equivalent distributed by a subordinate drug dealer, Corey Owens.

Based on evidence provided by Owens and a narcotics agent at the sentencing hearing, the district court concluded that the drugs attributable to Owens were reasonably foreseeable to Brown and, thus, were attributable to Brown. And the district court adopted Brown's PSR in its entirety. As a result, the district court varied upward from Brown's Sentencing Guidelines range of 188 to 235 months to impose the statutory maximum of 240 months' imprisonment. The district court also indicated it would have imposed the

22

same sentence based on the 18 U.S.C. § 3553(a) factors irrespective of the drug weight calculation.

## II.

We review a district court's sentencing decision by determining first whether there has been procedural error and second whether a sentence is substantively reasonable. *United State v. Provance*, 944 F.3d 213, 215 (4th Cir. 2019). We review factual findings for clear error, including a district court's drug weight determination. *United States v. Flores-Alvarado*, 779 F.3d 250, 254 (4th Cir. 2015). "[I]f the district court makes *adequate findings* as to a controverted sentencing matter, this court must affirm those findings unless they are clearly erroneous." *Id.* (emphasis supplied) (alterations and internal quotation marks omitted).

Pursuant to the Sentencing Guidelines, a sentencing court determines a defendant's offense level by evaluating his "relevant conduct," that is, his own acts as well as, "in the case of a jointly undertaken criminal activity . . . , all acts and omissions of others that were:" (1) "within the scope of the jointly undertaken criminal activity"; (2) "in furtherance of that criminal activity"; and (3) "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (2016). All three aspects of this joint activity must be proven by a preponderance of the evidence. *United States v. Bell*, 667 F.3d 431, 440 (4th Cir. 2011). Acts of others outside the scope of the conspiracy in which the defendant agreed to participate -- even if those acts are known or reasonably foreseeable -- are not "relevant conduct" for sentencing purposes. *See* U.S.S.G. § 1B1.3 & cmt. 3B.

23

For a sentence to be procedurally reasonable, a district court must "make particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of the conduct" in question. *Flores-Alvarado*, 779 F.3d at 256 (alterations omitted) (internal quotation marks omitted). That is, a district court must supply specific findings as to the "critical factual question of the scope of the criminal activity [the defendant] agreed to jointly undertake." *Id.* A court's failure to make these findings warrants remand for resentencing. *Id.* at 254–55.

## III.

### A.

Brown takes issue with the calculation of his relevant conduct. He claims that the district court did not make adequate factual findings regarding the scope of his agreement with his co-conspirator, Owens, and that the Government did not provide adequate evidence to support holding Brown accountable for Owens's marijuana and cocaine transactions, which totaled 180 kilograms of marijuana equivalent under the Sentencing Guidelines. In particular, Brown argues that *no* evidence connected him to Owens's cocaine dealing.

The Government avers that Brown's "supervision of Owens" provided the basis for the PSR's attribution of Owens's drugs to Brown, Appellants' Br. 32, though it acknowledges Owens's own testimony at the sentencing hearing was that he was *not* Brown's subordinate. The Government also points to testimony of FBI Agent John Farr indicating that two government cooperators said Brown and Owens sold marijuana together and that Owens himself claimed Brown demanded payment for marijuana seized from

24

Owens's operation. Though Owens distributed cocaine as well as marijuana, the Government did not put on evidence associating Brown with Owens's cocaine.

The district court credited the cooperators' testimony about Owens's marijuana distribution and expressly rejected Owen's disavowal of a supervisory relationship between the co-conspirators. Emphasizing the district court's statement that its sentencing decision would have been unchanged regardless of any difference in the drug weight, the Government argues that any error in the drug weight attribution was harmless. The majority accepted this harmless error argument. I do not.

B.

A district court's Sentencing Guidelines error is harmless if "(1) the district court would have reached the same result even if it had decided the [G]uidelines issue the other way, and (2) the sentence would be reasonable even if the [G]uidelines issues had been decided in the defendant's favor." *United States v. Gomez-Jimenez*, 750 F.3d 370, 382 (4th Cir. 2014) (internal quotation marks omitted). Undertaking an "assumed error harmlessness inquiry," *id.*, we assume the district court erred by attributing Owens's drug quantities to Brown. Here, the district court expressly indicated its evaluation of the 18 U.S.C. § 3553(a) factors compelled its sentencing decision no matter the quantity of drugs the court were to find. Crediting that assertion, we next ask whether the sentence would be reasonable even if Owens's drugs were not attributed to Brown.

But without Owens's drug quantity, Brown was only personally connected to approximately three kilograms of marijuana equivalent, which supports a base offense level of eight, a total offense level of 17, and a Sentencing Guidelines range of 37 to 46

25

months' imprisonment.  *See* U.S.S.G. § 2D1.1(c); ch. 5, pt. A (2016).  As the majority notes, the difference between that sentence and the sentence Brown received is a 194-month upward variance.  Put differently, the 240-month sentence Brown actually received was more than <u>five times</u> the Sentencing Guidelines range as calculated without Owens's drug quantities.

The Government did not even attempt to defend the five-fold upward variance as substantively reasonable.  Instead, the Government argued only that the five-month variance from the Sentencing Guidelines range that included Owens's drug weight was reasonable.  Gov't Br. 36 ("Even if the district court's drug weight finding was erroneous, the error was harmless because the district court expressly stated that it would have imposed a 240-month sentence regardless of its drug weight finding, and that sentence is substantively reasonable.  The district court's five-month upward variance from 235 months to 240 months was modest.").  The Government's argument that there was only a "modest" five-month upward variance significantly understates the effect Owens's drug attribution had on Brown's Sentencing Guidelines range.  *Id.*

The majority's harmless error evaluation at least correctly recognized that we must consider the reasonableness of the variance from the Sentencing Guidelines range calculated *without* Owens's drug quantity included -- i.e. as though "the [G]uidelines issue had been decided in the defendant's favor."  *Gomez-Jimenez*, 750 F.3d at 382 (internal quotation marks omitted).  As the majority then explains, we must still decide whether the district court's analysis of the 18 U.S.C. § 3553(a) factors can support the sentence.  The district court stressed the very serious nature of the offense and Brown's history and

26

characteristics as reflecting extensive criminal involvement, which includes prior convictions for assault and use of a firearm. Though I agree with the district court that Brown's history and violent conduct, and the seriousness of the present conspiracy are significant, I disagree with the majority's conclusion that the explanation given by the district court was clearly sufficient to support the drastic upward variance of 194 months imprisonment. I am especially troubled that a significant portion of the violent conduct cited by the district court involved acts for which Brown was separately charged and ultimately *acquitted*.[1]

When the court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall v. United States*, 552 U.S. 38, 50 (2007). Here, the district court did *not* consider the extent of *a 194-month variance* in issuing its sentence. When a court "settle[s] on the appropriate sentence, [it] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* (citation omitted). I cannot conclude that the court did so here.

---

[1] I acknowledge that both the Sentencing Guidelines and our precedent allow for the use of acquitted conduct at sentencing. *See* U.S.S.G. § 1B1.3 (2016) cmt., backg'd; *United States v. Lawing*, 703 F.3d 229, 241 (4th Cir. 2012) (citing *United States v. Watts*, 519 U.S. 148, 152 (1997)). However, given everything else I find lacking in the sentencing calculation in this case, the consideration of acquitted conduct adds too much insult to injury for me.

C.

On appeal, we lack key factual determinations as to the scope of Brown's involvement in the drug distribution and certainly do not have an adequate explanation as to how a 240-month sentence for drug distribution involving three kilograms of marijuana equivalent avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Though adopting the PSR "can be a satisfactory means of resolving factual disputes," *Flores-Alvarado*, 779 F.3d at 256 (citation omitted), the PSR here did not identify an agreement between Owens and Brown involving cocaine distribution, nor did it explain how such distribution would have been foreseeable to Brown. The district court needed to make these determinations on the record and its failure to do so interferes with our ability to fairly review Brown's sentence.

"[T]he assumed error harmlessness inquiry is an appellate tool that we utilize in appropriate circumstances to avoid the 'empty formality' of an unnecessary remand *where it is clear* that an asserted guideline miscalculation did not affect the ultimate sentence." *United States v. Hargrove*, 701 F.3d 156, 163 (4th Cir. 2012) (emphasis supplied). In my view, this is not such a case. As we have previously explained, our assumed harmless error standard is not meant to "allow district courts to ignore their responsibility to consider the [G]uidelines in a meaningful manner when sentencing a defendant." *Id.* (citing *Rita v. United States*, 551 U.S. 338, 351 (2007)). I fear that the majority's decision -- utilizing harmless error analysis to uphold a 194-month variance primarily based on a defendant's *acquitted* conduct as opposed to the actual offense of conviction -- does just that.

28

IV.

A.

Because I am firmly of the view that we cannot hold the assumed error to be harmless, I would consider whether the district court did in fact err. Here, the district court failed to make a finding as to the scope of Brown's agreement sufficient to meet our standard. Therefore, in my view, we should remand for that finding to be made on the record. *See Flores-Alvarado*, 779 F.3d at 255 (quoting *United States v. Soto-Piedra*, 525 F.3d 527, 531 (7th Cir. 2008) ("Conspiracy liability . . . is generally much broader than jointly undertaken criminal activity under [the Sentencing Guidelines]")). "[T]o determine the defendant's accountability for the conduct of others under [the Sentencing Guidelines], the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e. the scope of the specific conduct and objectives embraced by the defendant's agreement." U.S.S.G. § 1B1.3 cmt. 3B (2016).

Without such a finding, we cannot even proceed to determine which of Owens's drugs (especially the cocaine amounts) are within the scope of Brown's agreement with Owens. How can we? The district court itself did not explain the scope of that agreement. The district court erred in failing to recognize that Owens's drug weight included cocaine. The Government attempts to avoid drawing attention to this by arguing that the district court "credited the trial testimony . . . that Brown and Owens sold drugs together." Gov't Br. 33–34. But the relevant trial testimony and the court's conclusion referenced marijuana

29

alone. *See* J.A. 3031–32 (reflecting that *even the Government* at sentencing said the evidence indicated Brown should be responsible for "specifically the marijuana").[2]

B.

To credit Brown with Owens's cocaine distribution, the district court needed to define the scope of Brown's agreement of joint activity with Owens in a way that included cocaine. It did not. The district court's description of Owens's and Brown's joint activity mentioned only marijuana. As the court explained, it "credit[ed] the testimony of Anthony Day, and [it] credit[ed] the testimony of Adrienne Williams, as testified to by Special Agent Farr in this case, and *that was that Mr. Brown and Mr. Owens were selling marijuana together.*" J.A. 3049 (emphasis supplied). The court's conclusion was that "*the marijuana* that's attributable to Owens is reasonably foreseeable to Mr. Brown." *Id.* at 3050 (emphasis supplied). Critically, nowhere does the court refer to cocaine as part of their joint activity or as foreseeable to Brown.

Had the district court recognized cocaine was at issue, it should have defined the co-conspirators' joint activity to encompass that drug *if* there was evidence to support that view by a preponderance. But the court had before it *no* evidence connecting Brown to Owens's cocaine dealing.

At sentencing, both the Government and the district court referred to Brown as being responsible for Owens's *marijuana*, not his cocaine. Indeed, when determining the sentence, the district court referred only to Brown's connection to Owens's *marijuana*

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

dealing. In *Flores-Alvarado*, we made clear that the district court must define "the scope of the criminal activity the particular defendant agreed to jointly undertake." 779 F.3d at 256 (quoting U.S.S.G. § 1B1.3, cmt. 2). But, with respect to defining the scope of the criminal activity in this case, the closest the district court came was saying it credited testimony that "Mr. Brown and Mr. Owens were selling *marijuana* together." J.A. 3049 (emphasis supplied). Yet the court never explained whether cocaine distribution was part of their joint activity. Therefore, although we know the court understood Brown to have agreed to participate in the overarching conspiracy, we lack a more specific finding that encompasses cocaine. The Sentencing Guidelines and our precedent require more. *See Flores-Alvarado*, 779 F.3d at 256 ("[T]he scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant . . . ." (emphasis in original) (quoting U.S.S.G. § 1B1.3 cmt. 2)).

V.

By holding Brown responsible for the full drug weight in the PSR, the district court attributed Owens's cocaine distribution to him without the requisite "particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of the conduct" involving that drug. *Flores-Alvarado*, 779 F.3d at 255 (emphasis omitted). I cannot conclude that this error -- which caused an under-supported 194-month upward variance -- was harmless. As a result, I would remand for adequate findings on the record with regard to Brown's agreement to and involvement in Owens's drug distribution.

I therefore respectfully dissent.

31