**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-4181**

---

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RODRIQUIES M. EVANS, a/k/a Dree,

Defendant – Appellant.

---

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:18−cr−00014−JPB−JPM−1)

---

Argued:  October 27, 2023                          Decided:  January 5, 2024

---

Before AGEE, HARRIS, and HEYTENS, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Agee and Judge Heytens joined.

---

**ARGUED:**  Alan Hideto Yamamoto, Alexandria, Virginia, for Appellant.  Carly Cordaro Nogay, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.  **ON BRIEF:**  William Ihlenfeld, United States Attorney, Shawn M. Adkins, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

Rodriquies Evans was convicted at trial of four criminal offenses stemming from his participation in a multistate conspiracy to transport and distribute methamphetamine and other controlled substances. At sentencing, the district court adopted a Sentencing Guidelines advisory range of life imprisonment and sentenced Evans to the statutory maximum of 80 years in prison.

The primary issue on appeal is the calculation of Evans's Sentencing Guidelines range. We agree with Evans that the district court erred in its Guidelines determination and therefore vacate Evans's sentence and remand for resentencing.

## I.

Rodriquies Evans was involved in a large-scale conspiracy to transport and sell drugs – primarily methamphetamine, but also heroin, cocaine, and crack – across Ohio and West Virginia. A key figure in that conspiracy was Robert Gregory, a drug supplier in Columbus, Ohio, who became Evans's co-defendant. Evans bought his drugs from Gregory in Ohio and then redistributed the drugs, generally to associates in West Virginia who sold them to individual end users.

Gregory, in turn, worked with a third co-defendant, Cedric Douglas, to obtain drugs. Specifically, Douglas transported large quantities of methamphetamine from Atlanta, Georgia to Columbus, Ohio, where Gregory would pass the methamphetamine on to purchasers including Evans. On one of Douglas's trips from Atlanta to Columbus, he was stopped by law enforcement, and a search of his vehicle turned up nearly three kilograms

2

(roughly 6.5 pounds) of crystal methamphetamine. That drug weight is important; at sentencing, the attribution to Evans of the pure methamphetamine seized from Douglas was the starting point for his Sentencing Guidelines calculation.

A federal grand jury returned a four-count superseding indictment against Evans and six others, including Gregory and Douglas. The indictment charged one count of conspiracy to distribute and to possess with the intent to distribute controlled substances. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846. It also charged two substantive counts of distribution of methamphetamine and one count of possession with intent to distribute the same, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), based on controlled buys and seizures from dealers in West Virginia who were connected to Evans. Though Evans was not directly involved in those incidents, the indictment charged him with liability as a co-conspirator, *see* 18 U.S.C. § 2, under *Pinkerton v. United States*, 328 U.S. 640 (1946). Evans was tried with Douglas in the Northern District of West Virginia, and after a four-day trial, the jury found Evans (and Douglas) guilty on all charges.

In preparation for Evans's sentencing, the probation officer compiled a Presentence Investigation Report ("PSR"). The PSR calculated Evans's advisory Sentencing Guidelines range as life imprisonment, based on a criminal history score of IV and a total offense level of 48 which, under the Guidelines, defaulted to the maximum offense level of 43. Because each of Evans's four convictions carried a maximum statutory sentence of 20 years, *see* 21 U.S.C. § 841(b)(1)(C), the Guidelines range was capped at 80 years (or 960 months).

Because this appeal turns on the calculation of Evans's offense level, we describe it in some detail here. To arrive at an offense level of 48, the PSR began by holding Evans accountable for the 2.788 kilograms of crystal methamphetamine (or "ice") seized from Douglas during his traffic stop.[1] The PSR also listed other drug quantities derived from activities of Evans's associates in West Virginia. But the government expressly declined to rely on those incidents for its drug-quantity attribution, instead resting exclusively on the 2.788 kilograms of crystal methamphetamine taken from Douglas's truck. S.J.A. 1288 ("Because the overwhelming amount of drug relevant conduct comes from this one seizure [from Douglas] of crystal methamphetamine, the United States will rely on that one seizure for its drug relevant conduct calculation[.]"); *id.* at 1292. With the offense thus categorized as one involving at least 1.5 but less than 4.5 kilograms of crystal methamphetamine, the relevant Guideline prescribed a base offense level of 36. *See* U.S.S.G. § 2D1.1(c)(2).

To that base offense level, the PSR then applied multiple enhancements: (1) a two-level enhancement for possessing a firearm, *see* § 2D1.1(b)(1); (2) a two-level enhancement for making a credible threat to use violence, *see* § 2D1.1(b)(2); (3) a four-level enhancement for being an organizer or leader of the conspiracy, *see* U.S.S.G. § 3B1.1(a); (4) a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing drugs, *see* § 2D1.1(b)(12); and (5) a two-level enhancement

---

[1] The PSR uses several terms to describe the methamphetamine at issue, including "pure," "crystal," and "ice." What matters, as the PSR explains, is not the label but the fact that the methamphetamine in the three containers seized from Douglas tested, respectively, at 96, 95, and 91 percent purity, for a total of 2,788 grams of pure substance.

4

for having committed the offense as part of a pattern of criminal conduct engaged in as a livelihood, *see* § 2D1.1(b)(16)(E). Those enhancements together brought Evans's offense level to 48. The Sentencing Guidelines Table stops at level 43, however, so the PSR defaulted to an offense level of 43 – which, combined with Evans's (undisputed) criminal history score of IV, meant an advisory Guidelines range of life imprisonment, U.S.S.G. ch. 5, pt. A (sentencing table), capped by the relevant statutory maximums at 80 years.

Evans lodged objections to the PSR's calculation of his Guidelines range, disputing the drug quantity attributed to him and application of each of the five enhancements to his offense level. At sentencing, the district court overruled those objections and adopted the PSR in its entirety. J.A. 1225–27. The court then sentenced Evans to the statutory maximum term of imprisonment of 240 months' imprisonment on each of his four convictions, to be served consecutively, for a total of 960 months or 80 years in prison. J.A. 1244–45. In the court's view, none of the 18 U.S.C. § 3553(a) factors supported Evans's requested downward variance; instead, Evans was a "danger to society" and the Guidelines sentence was fully warranted. J.A. 1250–51.

Evans timely appealed.

## II.

5

Evans's appeal is directed primarily at his sentence.[2]  We evaluate the sentence imposed by a district court for abuse of discretion, "which translates to review for reasonableness." *United States v. Crawford*, 734 F.3d 339, 341–42 (4th Cir. 2013) (internal quotation marks omitted). "Sentences must be both procedurally and substantively reasonable." *Id.* at 342.  On appeal, Evans argues that his sentence is procedurally unreasonable, challenging the district court's calculation of the quantity of drugs attributable to him for sentencing purposes and the court's imposition of four sentencing enhancements.[3]  For the reasons given below, we agree with Evans that the district court committed significant procedural error in calculating his Sentencing Guidelines range, and we therefore vacate his sentence and remand for resentencing.

---

[2] In his counseled brief, Evans raises one argument related to his conviction, challenging an evidentiary ruling that allowed a police officer to summarize at trial the contents of a phone conversation between Evans and a potential customer.  According to Evans, that summary amounted to impermissible expert testimony under Federal Rule of Evidence 701.  Because Evans makes that argument for the first time on appeal, our review is for plain error only, *see United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006), and we find no reversible error here.

In a subsequent motion, Evans sought appointment of new counsel to press additional challenges to his conviction, outlining claims regarding the sufficiency of the evidence against him and a purported constructive amendment of his indictment.  We have reviewed those claims and find them to be without merit.  Accordingly, we deny the motion for new counsel as moot.

[3] Evans also suggests that the district court should have varied downward in sentencing because the Guidelines disproportionately penalize offenses involving higher purity methamphetamine.  *See United States v. Moreno*, 583 F. Supp. 3d 739, 743–45 (W.D. Va. 2019).  Because the district court erred procedurally in calculating Evans's Guidelines range, we do not address this substantive challenge to Evans's sentence.  *See United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) ("If, and only if, we find the sentence procedurally reasonable can we consider [its] substantive reasonableness[.]") (cleaned up).

6

"The sentences imposed for drug offenses are driven by the quantity of drugs involved." *United States v. Flores-Alvarado*, 779 F.3d 250, 255 (4th Cir. 2015); *see also* U.S.S.G. § 2D1.1(c) (Drug Quantity Table). This case is no exception; Evans's base offense level of 36 – the starting point for his final offense level of 43 – is predicated on the attribution to Evans of the nearly three kilograms of crystal methamphetamine seized from Douglas during his traffic stop. We thus begin with Evans's challenge to the drug quantity attributed to him by the district court.

A district court's factual findings as to drug attribution are reviewed for clear error. *Crawford*, 734 F.3d at 342. But that review can be undertaken only if a district court first makes the findings necessitated by the relevant legal standard. *Flores-Alvarado*, 779 F.3d at 254–56. And here, that did not happen. Because the district court applied the wrong legal standard in resolving a dispute over attributing to Evans the drugs seized from Douglas, it failed to make the findings required under the proper standard. Under those circumstances, "we are unable to review the [attribution] issue and must remand for resentencing." *Id.* at 257.

The legal standard that governs Evans's attribution claim is well established. For purposes of substantive liability under *Pinkerton*, a defendant may be held vicariously liable for the acts of his co-conspirators so long as those acts are within the scope of the conspiracy as a whole and reasonably foreseeable to the defendant. *See United States v. Gillespie*, 27 F.4th 934, 941–42 (4th Cir. 2022). But for purposes of sentencing, the Guidelines have adopted a different and narrower principle of accountability. U.S.S.G. § 1B1.3, cmt. n.1 (distinguishing "sentencing accountability" from "criminal liability" with

7

respect to the acts of others).  Only acts of co-conspirators that fall within "the scope of the criminal activity the *particular* defendant agreed to jointly undertake" – as opposed to "the scope of the *entire* conspiracy" – count as relevant conduct under the Sentencing Guidelines.  *Id.* at cmt. n.3(B) (emphasis added); *see Flores-Alvarado*, 779 F.3d at 255–56.  Acts of others that are not within the scope of the defendant's own agreement to jointly undertake "the particular criminal activity," on the other hand, are not relevant conduct under the Guidelines, even if reasonably foreseeable.  U.S.S.G. § 1B1.3, cmt. n.3(B).  So before, say, drugs seized from a co-conspirator may be attributed to a defendant at sentencing, a district court must make "*particularized* findings" as to the scope of the defendant's agreement to jointly undertake criminal activity as well as to foreseeability.  *Flores-Alvarado*, 779 F.3d at 256 (emphasis in original) (quoting *United States v. Bolden*, 325 F.3d 471, 499 (4th Cir. 2003)); *see also* U.S.S.G. § 1B1.3, cmt. n.3(B).

Evans invoked precisely that standard in objecting to the attribution of the crystal methamphetamine seized from Douglas, arguing that there was no connection between *his* limited agreement to undertake criminal activity with Gregory – by purchasing drugs from Gregory in Ohio and distributing them in West Virginia – and Gregory's wider drug operations, including Gregory's arrangement with Douglas to import drugs from Georgia.  J.A. 1203–06.  But in overruling that objection, the district court did not apply the Guidelines standard for relevant conduct or consider the scope of *Evans's* agreement.  Instead, it asked only whether the drugs seized from Douglas were within the scope of "the entire conspiracy," concluding that they could be attributed to Evans because they "were within the scope of the conspiracy, were in furtherance of the conspiracy, and were

8

foreseeable due to the large amounts that were being distributed as part of the conspiracy." J.A. 1224. That is the standard for substantive *Pinkerton* liability, not for sentencing accountability under U.S.S.G. § 1B1.3, and in conflating the two, the district court committed significant procedural error. *See Flores-Alvarado*, 779 F.3d at 255 ("Conspiracy liability, as defined in *Pinkerton*, is generally much broader than jointly undertaken criminal activity under § 1B1.3.") (cleaned up).

Whether Evans could be held accountable for the drugs seized from Douglas under the correct § 1B1.3 standard is a question that is not properly before us today. The government argued in the district court that Douglas's transport of nearly three kilograms of crystal methamphetamine was indeed within the scope of Evans's agreement to engage in joint criminal activity and foreseeable to him, emphasizing occasions on which Evans was observed interacting with Douglas. J.A. 1217–18. But because the district court did not apply the § 1B1.3 standard, it also failed to make the necessary factual findings on those questions. And without those findings, there is nothing for us to review. *Flores-Alvarado*, 779 F.3d at 254–57. Accordingly, we take no position on the ultimate attribution question in this case, and instead vacate Evans's sentence and remand for the district court to conduct the proper analysis in the first instance. *Id.* at 257.[4]

---

[4] We recognize that the district court here, like the court in *Flores-Alvarado*, did adopt the PSR, which may in some cases "be a satisfactory means of resolving factual disputes." 779 F.3d at 256. But as in *Flores-Alvarado*, the factual recitations in Evans's PSR, which emphasize a handful of interactions between Evans and Douglas, do not so clearly support attribution under U.S.S.G. § 1B1.3 that we can do without a factual finding by the district court. *See id.* at 257 (explaining that facts included in the PSR – including a prior drug transaction between the defendant and the relevant co-conspirator – provide only a "hint that there might in fact be evidence establishing a sufficient connection").

In so doing, we decline the government's invitation, offered for the first time at oral argument, to bypass this issue altogether by attributing to Evans not the 2.788 kilograms of crystal methamphetamine seized from Douglas, but instead other drug quantities listed in the PSR. It may be, as the government suggests, that those other drug quantities, derived primarily from West Virginia transactions linked to Evans and his associates, could properly be attributed to Evans under § 1B1.3, and that if they were, Evans's final offense level would end up at the same level 43. The problem, of course, is that the district court has never considered whether those drug quantities may be attributed to Evans, let alone made the particularized findings that would be necessary for attribution under § 1B1.3 – because until now, as noted above, the government has relied exclusively on the Douglas seizure for its relevant-conduct calculation. *See* S.J.A. 1288. Making a fact-intensive determination as to drug-weight attribution in the first instance is well outside our purview as an appellate court, *see United States v. Stevenson*, 396 F.3d 538, 543 (4th Cir. 2005), and we leave this matter, too, to the district court on remand.

Finally, for the sake of clarity at resentencing, we briefly address an additional and conceded procedural error in calculating Evans's offense level. As described above, the district court applied several enhancements to Evans's base offense level, including both a two-level enhancement for possession of a firearm, *see* U.S.S.G. § 2D1.1(b)(1), and a two-level enhancement for making "a credible threat to use violence," *see id.* at § 2D1.1(b)(2). Though these two enhancements may be applied cumulatively, the possession of a firearm or other dangerous weapon underlying a § 2D1.1(b)(1) enhancement cannot by itself be the basis for a second, "threat" enhancement under § 2D1.1(b)(2). *See* U.S.S.G. § 2D1.1,

10

cmt. n.11(B).  But it appears that the district court engaged in just such double-counting, overruling Evans's objection to the threat enhancement by explaining:

> He was seen holding the firearm.  And not only that, but it was a 50-shot magazine, a drum.  That's not only a firearm.  That is almost, per se, a threat of violence.  I mean, there is no other reason for somebody to carry a firearm of that nature unless they're going to be involved in violence.

J.A. 1224–25.  And as the government concedes on appeal, it provided the district court with no other factual basis sufficient to support imposition of the § 2D1.1(b)(2) threat enhancement.  *See* Brief of Appellee at 8.  The parties thus agree – as do we – that the district court erred in applying the § 2D1.1(b)(2) enhancement in calculating Evans's Sentencing Guidelines range.[5]

### III.

For the foregoing reasons, we vacate Evans's sentence and remand for resentencing proceedings consistent with this opinion.

---

[5] Evans also has raised meaningful questions regarding application of a four-level leadership enhancement to his offense level.  *See* U.S.S.G. § 3B1.1(a) (providing for four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive").  According to Evans, his role in the conspiracy was limited to buying and selling drugs to others, which – even in league with five or more participants – is not sufficient to warrant that enhancement.  *See* *United States v. Cameron*, 573 F.3d 179, 185 (4th Cir. 2009).  The district court overruled Evans's objection without addressing that argument directly or providing much in the way of reasoning.  *See Bolden*, 964 F.3d at 289 (explaining that absence of explanation may make it impossible to review application of a sentencing enhancement).  Nor did the district court address the factors laid out in the Guidelines commentary.  *See* U.S.S.G. § 3B1.1(a) cmt. n.4; *Cameron*, 573 F.3d at 184 (explaining that courts "must" consider these factors).  This matter, too, we leave to the district court on remand.  We express no view as to the ultimate resolution of Evans's challenge to this or any other sentencing enhancement not discussed in our opinion.

11

*VACATED AND REMANDED*

*VACATED AND REMANDED*