**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4055

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ROBERT KESHAUN TURNER,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:20-CR-00350-TDS-1)

Argued:  September 24, 2024                    Decided:  December 4, 2024

Before THACKER, HARRIS, and QUATTLEBAUM, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Thacker and Judge Quattlebaum joined.

**ARGUED:**  Ryan M. Prescott, PRESCOTT LAW, PLLC, Clemmons, North Carolina, for Appellant.  Laura Jeanne Dildine, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:**  Daniel A. Harris, CLIFFORD & HARRIS, PLLC, Greensboro, North Carolina, for Appellant.  Sandra J. Hairston, United States Attorney, Margaret M. Reece, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

Robert Keshaun Turner pleaded guilty to being a felon in possession of a firearm after the police seized a gun from a car in which Turner was sitting. On appeal, Turner first challenges the denial of his motion to suppress the gun on Fourth Amendment grounds. Finding no Fourth Amendment violation, we affirm Turner's conviction. With respect to his sentence, Turner argues that inconsistencies between the supervised-release conditions announced at his sentencing and those in his written judgment constitute error under *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020). Again, we disagree and conclude no *Rogers* error was committed. But because Turner's criminal history score concededly was miscalculated, resulting in a too-high Sentencing Guidelines advisory range, we vacate Turner's sentence and remand for resentencing.

## I.

### A.

The events underlying this case unfolded over a roughly two-day period in Durham, North Carolina. During the evening of June 1, 2020, the brother of the defendant, Robert Keshaun Turner, notified local law enforcement that his handgun, a black and gray Ruger Model SR45, was missing from its usual place in a lockbox in his bedroom. When Officer David Flores responded, Turner's brother reported that the gun had been stolen by Turner, the only other person with knowledge of the gun and access to its location. Turner's brother also advised that Turner was involved with the Folk Nation street gang, which was in conflict with another gang at the time. Flores presented this information to a state

2

magistrate judge, who issued a warrant for Turner's arrest.  In the process, Flores also learned that Turner was a felon and a validated gang member.

The next night, Flores responded to a carjacking report in which the victim alleged that Turner pointed a black and gray Ruger Model SR45 handgun at him and threatened to shoot unless he gave Turner the keys to his car.  Flores sought a second arrest warrant for Turner, but while he was en route to the magistrate judge, the victim informed law enforcement that Turner had returned his vehicle.  Finding that the matter required further investigation, the magistrate judge declined to issue a second warrant.

At around 2:00 a.m. on June 4, 2020 – less than 27 hours after the carjacking report, and approximately two days after the initial theft of the gun – Flores responded to a shots-fired call at an EZ Mini Mart.  Flores was familiar with the location, having previously responded to calls reporting gunshots, heavy gambling, and gang activity in that area. When Flores arrived, other police officers were already on the scene, and Flores parked his patrol car a short distance away.  From that point forward, his activities were captured by his body-worn camera.

As Flores approached the store, he recognized Turner sitting in the driver's seat of a stationary black Buick.  After verifying Turner's name, Flores asked Turner to exit the vehicle, then handcuffed and arrested him on his outstanding warrant.  Flores asked Turner if there was anything on his person or in the vehicle about which law enforcement should be aware; Turner replied that there was not.  Flores proceeded to frisk Turner, finding no weapons or contraband.  He then placed Turner in the back of his patrol car.

3

By the time Flores returned to the black Buick – roughly two minutes after first taking Turner into custody – Flores's immediate supervisor, Corporal Peterson, was already searching the vehicle. Flores joined the search and, shortly thereafter, Peterson found a firearm in the glove compartment. Flores later confirmed that the gun in the black Buick was the gun stolen from Turner's brother.

**B.**

Turner was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). He moved to suppress the handgun, arguing that the officers' warrantless search of the black Buick violated the Fourth Amendment. The government opposed, arguing that two Fourth Amendment warrant exceptions – the search-incident-to-arrest exception and the automobile exception – each applied and independently justified the search.

At the suppression hearing, Officer Flores testified as to the events described above. The district court credited Flores's account, which was corroborated by the footage from his body-worn camera that was admitted as evidence. *See United States v. Turner*, No. 1:20CR350-1, 2021 WL 2435609, at *1 (M.D.N.C. June 15, 2021). The district court then denied Turner's motion to suppress, holding that the search of the car in which Turner was sitting was a lawful search incident to arrest. *Id.* at *4. In a thoroughly reasoned opinion, the court applied the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009), explaining that it allows for a warrantless search of a vehicle incident to the arrest of a recent occupant so long as "it is reasonable to believe the vehicle contains evidence of the crime of arrest." *Turner*, 2021 WL 2435609, at *3 (quoting *Gant*, 556 U.S. at 351). This

4

"reasonable to believe" standard, the court found, is a "less demanding standard than probable cause." *Id.*; *see also id.* at *3 n.2. And based on all the facts and circumstances of which Officer Flores was aware at the time of the search, the district court concluded there was "at least a reasonable belief that Turner's vehicle contained evidence of the larceny of the firearm" for which Turner was arrested "such that the search of the vehicle incident to arrest was permissible" under *Gant*. *Id.* at *4.

### C.

After his motion to suppress was denied, Turner pleaded guilty to possession of a firearm by a convicted felon but reserved his right to appeal the denial of his suppression motion.

At sentencing, the district court adopted a Sentencing Guidelines advisory range of 46 to 57 months' imprisonment. That Guidelines range was based on an offense level of 19 and seven criminal history points, which put Turner in criminal history category IV. Though the parties had initially debated the proper offense level, they ultimately agreed with the district court's determination, endorsing all parts of its calculation. The court sentenced Turner to a within-Guidelines term of imprisonment of 57 months, to be followed by three years of supervised release. As relevant here, Turner's sentence included four special conditions of supervised release.

Turner timely appealed. His counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that there were no meritorious grounds for appeal. After reviewing the record, this court appointed new counsel for Turner and directed supplemental briefing on three issues: the denial of Turner's motion to suppress; the

5

consistency of the district court's oral pronouncement of supervised-release special conditions with the written judgment; and the calculation of Turner's advisory Sentencing Guidelines range, especially with respect to Turner's criminal history score.

## II.

### A.

We begin with Turner's suppression motion. When, as here, a district court denies a motion to suppress, we review the court's "legal conclusions de novo and its factual findings for clear error, considering the evidence in the light most favorable to the government." *United States v. Kolsuz*, 890 F.3d 133, 142 (4th Cir. 2018). Having undertaken that review, we agree with the district court that the warrantless search of the black Buick was justified by the search-incident-to-arrest exception as set out in *Gant* and did not violate the Fourth Amendment.[1] The district court correctly denied Turner's suppression motion, and we therefore affirm Turner's conviction.

### 1.

Warrantless searches – like the search of the vehicle in which Turner was sitting when he was arrested – are "per se unreasonable under the Fourth Amendment," subject to "only a few specifically and well-delineated exceptions." *Turner*, 2021 WL 2435609, at

---

[1] Accordingly, and like the district court, *see Turner*, 2021 WL 2435609, at *4, we need not consider the government's alternative argument under the automobile exception to the warrant requirement, which allows for a search of a "readily mobile" vehicle if there is probable cause to believe it contains contraband or evidence of any criminal activity. *See United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013) (describing automobile exception).

6

*2 (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  Among those exceptions is one for searches incident to arrest.  As relevant here, that exception authorizes a warrantless vehicle search "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."  *Gant*, 556 U.S. at 343 (2009) (internal quotation marks omitted).[2]

Neither the Supreme Court nor this court has articulated the precise quantum of proof necessary to satisfy *Gant*'s "reasonable to believe" standard.  But as the district court observed, our cases "indicate that ['reasonable to believe'] is a less demanding standard than probable cause."  *Turner*, 2021 WL 2435609, at *3.  We made that point most clearly in *United States v. Baker*, 719 F.3d 313 (4th Cir. 2013), contrasting the *Gant* search-incident-to-arrest exception with the automobile exception.  The automobile exception, we explained, is in some ways the broader of the two, allowing police officers to "search a vehicle for evidence of any crime, not just the crime of arrest" as permitted by *Gant*.  *Id.* at 319.  But there is a catch:  Under the automobile exception, police may search only "on a showing of probable cause," rather than the "*mere reasonable belief*" that will justify a search incident to arrest under *Gant*.  *Id.* (emphasis added); *see also United States v. Davis*, 997 F.3d 191, 201–02 (4th Cir. 2021) (considering the *Gant* "reasonable to believe"

---

[2] *Gant* permits a warrantless search of a vehicle incident to arrest in only one other circumstance: "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."  556 U.S. at 343; *see Baker*, 719 F.3d at 317.  The parties agree that this prong of the search-incident-to-arrest exception does not apply here.  *See Turner*, 2021 WL 2435609, at *3 n.1.

7

standard after first finding an absence of probable cause under the automobile exception).[3]

Our precedent may not conclusively define *Gant*'s "reasonable to believe" standard, in other words, but it does treat that standard as requiring something less than probable cause.

Like the district court, we think that is the most sensible reading of *Gant*. Most obviously, if the Supreme Court in *Gant* had intended to set the bar at probable cause, then it could have just said so; "probable cause" is an often used and well-understood Fourth Amendment term of art, and its absence from *Gant*'s search-incident-to-arrest analysis is conspicuous. *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014) (*Gant* Court's "choice of phrasing" suggests a standard "less demanding" than probable cause); *see Wynne v. Town of Great Falls, South Carolina*, 376 F.3d 292, 298 n.3 (4th Cir. 2004) ("[C]arefully considered language of the Supreme Court . . . generally must be treated as authoritative."). Moreover, *Gant* permits a vehicular search incident to arrest when it is "reasonable to believe evidence relevant to the crime of arrest *might* be found in the

---

[3] As the district court noted, there is a different context in which our precedent equates "reason to believe" with "probable cause." *See Turner*, 2021 WL 2435609, at *3 n.2. Under *Payton v. New York*, 445 U.S. 573 (1980), police may enter a suspect's home to execute an arrest warrant if there is "reason to believe the suspect is within." *Id.* at 603. And in *United States v. Brinkley*, 980 F.3d 377 (4th Cir. 2020), we held that this standard requires a showing of probable cause that the suspect will be home when the police enter. *Id.* at 384–86. But "it does not follow," as the district court explained, "that the formulation of 'reasonable to believe' in *Brinkley* applies equally in the context of vehicle searches pursuant to *Gant*." *See Turner*, 2021 WL 2435609, at *3 n.2. While *Brinkley* is based largely on the "special protections that the Fourth Amendment affords the home," 980 F.3d at 386, vehicles are afforded a significantly lesser expectation of privacy, *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976), and *Gant*'s "reasonable to believe" standard derives expressly from "circumstances unique to the vehicle context," *Gant*, 556 U.S. at 343; *see Turner*, 2021 WL 2435609, at *3 n.2. Turner does not argue otherwise on appeal, agreeing that *Brinkley* is inapplicable to warrantless vehicle searches under *Gant*.

vehicle." *Baker*, 719 F.3d at 317 (quoting *Gant*, 555 U.S. at 343) (emphasis added). While that formulation is not used consistently throughout the opinion, *see Gant*, 555 U.S. at 351, its prominence further suggests that the *Gant* Court had in mind a level of suspicion lower than probable cause. *Cf., e.g., Illinois v. Gates*, 462 U.S. 213, 238 (1983) (defining probable cause as "a fair probability that contraband or evidence of a crime *will* be found in a particular place" (emphasis added)).

Finally, there is a more practical point. As the district court explained, *see Turner*, 2021 WL 2435609, at *3 n.2, because the automobile exception allows for a warrantless search of a vehicle for any contraband or evidence on a showing of probable cause, reading *Gant* also to require probable cause would render its search-incident-to-arrest exception largely redundant. That result would be especially odd because *Gant* is at pains to distinguish the two doctrines. *Gant*, 556 U.S. at 347; *see United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) ("Presumably, the 'reasonable to believe' standard requires less than probable cause, because otherwise *Gant*'s evidentiary rationale would merely duplicate the 'automobile exception,' which the Court specifically identified as a distinct exception to the warrant requirement.").

For all these reasons, we agree with the district court that *Gant*'s "reasonable to believe" standard can be satisfied with something less than probable cause. That conclusion aligns with the approach taken by our own precedent and with the views expressed by our sister circuits, *see Edwards*, 769 F.3d at 514; *United States v. Rodgers*, 656 F.3d 1023, 1028 n.5 (9th Cir. 2011); *Vinton*, 594 F.3d at 25, and we think it is most faithful to the Supreme Court's opinion in *Gant*.

9

2.

We need go no further today in explicating *Gant*'s "reasonable to believe" standard – considering, for instance, how it relates to the "reasonable suspicion" standard associated with *Terry v. Ohio*, 392 U.S. 1 (1968). *Cf. Vinton*, 59 F.3d at 25 (comparing *Gant*'s "reasonable to believe" standard to the "reasonable suspicion" standard); *Brinkley*, 980 F.3d at 395–96 (Richardson, J., dissenting) (discussing Supreme Court's use of "reasonable suspicion," "reasonable belief," and "reason to believe" in *Terry* and other contexts). That is because we agree with the district court in a second respect: Whatever the precise contours of *Gant*'s "reasonable to believe" standard, that standard is met here.

As the district court emphasized, at the time of Turner's arrest at the EZ Mini Mart for theft of a firearm, Officer Flores was very familiar with Turner's activities and circumstances over the past two and a half days. *Turner*, 2021 WL 2435609, at *4. In investigating the original theft on June 1, Flores personally took the report of Turner's brother, learning that Turner was involved in a street gang that was potentially engaged in a gang conflict. The next night, Flores responded to a carjacking call and discovered that Turner had apparently stolen his brother's gun for personal use, rather than for a quick sale or trade, and was already putting it to work. And then the night after that, Flores came upon Turner moments after a shots-fired call, in an area known for gang activity – again, during a period when Turner's gang was reportedly at odds with another gang.

Under those circumstances, we agree with the district court that it was eminently reasonable for Flores to believe that Turner was likely armed – if only for self-defense – while he was sitting in the black Buick at the EZ Mini Mart just after reported gunfire. It

10

was also reasonable for Flores to believe that Turner was armed with the same stolen gun he had reportedly used just the night before in an apparent carjacking. And because Turner was not carrying a gun on his person – Flores's frisk had turned up nothing – the car in which Turner was sitting became the most likely place for Turner to have stowed a readily accessible weapon. Under *Gant*, that is enough to permit a search of the passenger compartment of the black Buick incident to Turner's lawful arrest on the outstanding warrant for theft of a gun.[4] Accordingly, the district court correctly denied Turner's motion to suppress.

**B.**

We next consider Turner's sentence and his claim that the district court committed an error under *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), when it entered in his written judgment certain special conditions of supervised release that differed from those announced at sentencing. We review the consistency of the district court's oral sentence and the written judgment de novo. *Rogers*, 961 F.3d at 296.

---

[4] During the suppression hearing, Turner argued to the district court for the first time that even if *Officer Flores* had a reasonable belief that the stolen gun would be found in the black Buick, *Corporal Peterson*, who participated in the search and found the gun in the glove compartment, did not. *Turner*, 2021 WL 2435609, at \*5. The district court rejected that argument, reasoning that even apart from Peterson's intervention, the gun inevitably would have been discovered by Flores during his own lawful search of the car. *Id.* We do not understand Turner to have challenged this ruling on appeal. In any event, we see no error in the district court's application of the inevitable discovery doctrine. *See United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (describing inevitable discovery doctrine).

11

*Rogers* and its progeny "require a district court to orally pronounce all discretionary conditions of supervised release at the sentencing hearing." *United States v. Mathis*, 103 F.4th 193, 197 (4th Cir. 2024). However, "a district court may satisfy its obligation to orally pronounce discretionary conditions through incorporation." *Rogers*, 961 F.3d at 299. The district court here did just that. It imposed four special conditions of supervised release, each of which was included in the sentencing recommendation provided in the Presentence Investigation Report ("PSR") compiled by the United States Probation Office. At Turner's sentencing hearing, the district court incorporated the conditions as set forth in the PSR, after confirming that defense counsel had reviewed them with Turner and had no objection. J.A. 159–160. Those special conditions – the conditions laid out in the PSR and incorporated at Turner's sentencing hearing – are a word-for-word match with those in Turner's written judgment. That is enough to satisfy the dictates of our *Rogers* decision.

Turner nevertheless faults the district court for going further than was required and reading aloud the special conditions from the PSR, so that each discretionary condition was announced "in open court with the defendant present." *Rogers*, 961 F.3d at 299 (cleaned up) (describing optimal practice). In so doing, the district court deviated ever so slightly from the language in the PSR and written judgment – which, according to Turner, amounts to a *Rogers* error.

We disagree. Not every inconsistency between a written judgment and an oral pronouncement is reversible *Rogers* error. *Mathis*, 103 F.4th at 197. The "written judgment does not have to match perfectly with the oral pronouncement," and only a

12

"material discrepancy" between the two violates the *Rogers* line of cases. *Id.* We see no such discrepancy in either of the two special conditions challenged by Turner.

The first, as incorporated at the sentencing hearing and written in the judgment, requires Turner to "cooperatively participate in a substance abuse treatment program, which may include drug testing and inpatient/residential treatment, and pay for *treatment services*, as directed by the probation officer." J.A. 169 (emphasis added). In reading that condition aloud at sentencing, the district court informed Turner of his obligation to "cooperatively participate in a substance abuse treatment program, which may include drug testing and inpatient and residential treatment, and to pay for *those services* as directed by the probation officer." J.A. 159 (emphasis added). We cannot see – and Turner has not explained – how referring to the treatment services already listed as "those services" instead of as "treatment services" materially altered the nature of this condition.

So too with the second challenged condition. As written in the incorporated PSR and the judgment, the condition states that Turner shall not "associate with or be in the company of any Folk Nation/Gangster Disciples gang member/security threat group member," J.A. 169; as stated orally in court, the condition states that Turner shall not "associate with or be in the company of any gang member, including the Folk Nation or Gangster Disciples gang, or security threat group," J.A. 160. Aside from simply quoting the two formulations of the condition, Turner has not identified any inconsistency with which he takes issue, let alone explained how it could be material. Moreover, Turner never responded to the government's argument that any difference is immaterial because the two formulations can plausibly be read to proscribe the same conduct. *See Mathis*, 103 F.3d at

13

197 ("[S]ome difference between the oral pronouncement and the written judgment is permitted when the government has offered an explanation for the alleged inconsistency to which the defendant has not responded."). We thus readily conclude that there is no material discrepancy as to this condition either.[5]

The *Rogers* rule is an important one, protecting the right of a defendant to be present when sentenced and facilitating sometimes meritorious objections to discretionary conditions of supervised release. *See Rogers*, 961 F.3d at 296, 298. But it was never intended to be an empty formality or a trap for district court judges who go beyond incorporation to provide an additional layer of protection to the defendants they are sentencing. Turner has identified no "material discrepancy" between his oral sentence and written judgment, *Mathis*, 103 F.4th at 197, and it follows that there is no *Rogers* error here.

## C.

We must nevertheless vacate Turner's sentence and remand for resentencing because, as the government concedes, Turner's criminal history score was improperly calculated, leading to the adoption of an advisory Guidelines sentencing range that was higher than it should have been.

---

[5] At oral argument, Turner's counsel acknowledged that the differences between the written judgment and oral pronouncement did not seem to be material. We appreciate counsel's candor, and we recognize that he briefed the *Rogers* issue at our court's instruction.

14

At the sentencing hearing, the parties agreed that Turner's criminal history score was seven, placing him in criminal history category IV and resulting in a Guidelines range of 46 to 57 months' imprisonment. That was a mistake. One of Turner's criminal history points was assigned for a 45-day sentence imposed in 2011, nine years before the current conviction. *See* U.S.S.G. §§ 4A1.1(c), 4A1.2(e) (assigning, as a general rule, one criminal history point for a sentence of less than 60 days imposed within 10 years of the instant offense). But because Turner was under 18 when his 45-day sentence was imposed, it should have been counted in his criminal history only if it was imposed within five years of the instant offense, *see id.* § 4A1.2(d)(2)(B), which it was not. The parties now agree that Turner's criminal history score should have been six, not seven; his criminal history category III, not IV; and his Guidelines sentencing range 37 to 46 months' imprisonment, not 46 to 57.[6]

Although Turner raised objections to the calculation of his offense level at sentencing, he never objected to the calculation of his criminal history score. Our review is thus for plain error only. *United States v. McLaurin*, 764 F.3d 372, 388 (4th Cir. 2014); Fed. R. Crim. P. 52(b). But the government, with forthrightness we appreciate, concedes

---

[6] The government also calls to our attention that Turner may be eligible for an additional two-level reduction in his criminal history category due to the recent retroactive Amendment 821 to the Sentencing Guidelines. Turner, for his part, argues that there are additional errors in his Guidelines calculation, though the government contends those arguments have been waived. We leave these issues for the district court to assess in the first instance at resentencing. We express no view as to the ultimate calculation of Turner's advisory sentencing range or any sentencing enhancement or reduction not discussed in our opinion. *See United States v. Evans*, 90 F.4th 257, 264 n.5 (4th Cir. 2024).

15

that the error here was plain, that it affected Turner's substantial rights, and that we should correct the error now. *See Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016) ("[T]he court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights."); *Rosales-Mireles v. United States*, 585 U.S. 129, 145 (2018) ("In the ordinary case, as here, the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings."). We agree and, accordingly, vacate Turner's sentence and remand so that he may be resentenced under a correctly calculated advisory sentencing range.

## III.

For the reasons given above, we affirm Turner's conviction, vacate Turner's sentence, and remand for resentencing consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*